LEXSEE 1994 U.S. DIST. LEXIS 392

**WOLFGANG ECKE, Plaintiff, v. DONALD ATKINS, JR., KENNETH STULLER, JR., SPECIAL AGENTS OF THE FBI FOR THE DISTRICT OF DELAWARE, UNNAMED and WILLIAM C. CARPENTER, Defendants.**

**Civil Action No. 88-688-LON**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*1994 U.S. Dist. LEXIS 392*

**January 12, 1994, Decided**

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] Wolfgang Ecke, pro se, plaintiff, c/o J. Petrak, Senftengerger Ring 88, D 1000 Berlin 26, Germany.

Nina A. Pala, Esquire, U.S. Attorney's Office, 1201 Market Street, Suite 1100, P.O. Box 2046, Wilmington, Delaware 19899, attorney for defendants.

**JUDGES:** TROSTLE

**OPINIONBY:** MARY PAT TROSTLE

**OPINION:**

REPORT AND RECOMMENDATION

Dated: January 12, 1994

Wilmington, Delaware

TROSTLE, U.S. Magistrate Judge

FACTS AND PROCEEDINGS

Plaintiff's pro se Complaint was received by this Court on November 3, 1988 (D.I. 2). Prior to that time, plaintiff had filed an administrative claim with the U.S. Department Justice under the Federal Tort Claims Act, *28 U.S.C. § 2672* et seq. (FICA). Pursuant to this administrative claim, plaintiff asserted that the FBI lost, damaged and did not properly inventory personal property that was seized in connection with his arrest (D.I. 59, Ex.A). After the claim was reviewed , it was denied by the Department of Justice on August 23, 1988 on the basis of insufficient evidence of negligence on the part of any federal employee. Pursuant to that letter, plaintiff was advised that if dissatisfied with the determination, he could file suit in the appropriate [*2] United States District Court under *28 U.S.C. § 2401*(b) within six (6) months after the date of mailing of the notification of denial (D.I. 59, Ex.B).

In his initial Complaint, plaintiff sued the United States of America, the U.S. Department of Justice and the Federal Bureau of Investigation alleging that these agencies were negligent in seizing his personal property (D.I. 2). The Complaint did refer to defendant Atkins in its body, though he was not a named party to the original Complaint.

Thereafter, the Magistrate construed his Complaint as an attempt to assert a civil rights claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 29 L. Ed. 2d 619, 91 S. Ct. 1999 (1971),* and determined that the Complaint should be dismissed without prejudice pursuant to *28 U.S.C. § 1915*(d) (D.I. 4).

Plaintiff had insisted that he was bringing his action under the Federal Tort Claims Act until the Court determined that the FTCA precluded his claim. In his objections to the Magistrate-Judge's Report and Recommendation, plaintiff asserted that since he was a pro se litigant and a German citizen [*3] unfamiliar with the laws of this country, he did in fact intend to bring a civil rights action for constitution violation under Bivens (D.I. 6, 26, 28, 30).

In its Order dated June 25, 1992 (D.I. 39), the Court concurred with the Magistrate-Judge's determination that *28 U.S.C. § 2680*(c) and *Kosak v United States, 465 U.S. 848, 79 L. Ed. 2d 860, 104 S. Ct. 1519 (1984)* precluded a FTCA claim, and dismissed plaintiff's Federal Tort Claim Act action against all defendants. However, the Court found that the Bivens action was not precluded as a matter of law and on the facts before it, but did note that plaintiff had named only the United States, the U.S. Department of Justice and the Federal Bureau of Investi-

gation as parties in the caption of his Complaint. As a result, since no Bivens remedy was available against defendants pursuant to *Laswell v. Brown, 683 F.2d 261, 268 (8th Cir. 1982)*, cert. denied sub nom., *Laswell v. Weinberger, 459 U.S. 1210, 75 L. Ed. 2d 446, 103 S. Ct. 1205 (1983), Jaffee v. U.S., 592 F.2d 712, 717-18 (3d Cir. 1978)*, cert. denied, *441 U.S. 961, 60 L. Ed. 2d 1066, 99 S. Ct. 2406 (1979)*, [*4] the Court determined that the United States, the U.S. Department of Justice and the FBI were not appropriate parties and dismissed the action against these three defendants. Because plaintiff did name an FBI agent who received service on behalf of defendant Federal Bureau of Investigation and indicated within the Complaint that other unidentified agents were also involved in the alleged constitutional deprivations, the Court afforded plaintiff the opportunity to amend his Complaint pursuant to *Fed R Civ P 15*, by requiring plaintiff to file an Amended Complaint pursuant to his Bivens claims against the individual FBI agents within twenty days of the date of the Order. If plaintiff failed to do so, then the claims against the FBI agents would be dismissed without prejudice (D.I. 39). Since plaintiff failed to amend his Complaint within the time specified pursuant to the June 1992 Order, on July 24, 1992, an Order dismissing plaintiff's Bivens claims against the individual agents without prejudice was entered (D.I. 42).

On August 4, 1992, plaintiff moved for reconsideration of the Court's July 24, 1992 Order and the case was reopened (D.I. 43). On August 12, 1992, the Court granted [*5] plaintiff's motion for reconsideration and ordered him to file an Amended Complaint within thirty days of the receipt of the Order (D.I. 45). That meant that the Amended Complaint should have been filed by mid-September 1992. Subsequently, on September 25, 1992, the deadline within which plaintiff was to amend his Complaint was extended to October 19, 1992 (D.I. 47). Again, plaintiff failed to meet the required date, but did file on October 26, 1992 a document titled "Amendment to the Complaint in Civil Action No. 88-688-LON and a Motion to Appoint Counsel for the Service of Volunteer Counsel" (D.I. 48).

Thereafter, the government in a letter motion to the Court requested that plaintiff's Bivens claims be dismissed (D.I. 50). Pursuant to an Order dated December 11, 1992 (D.I. 51), that motion was denied and plaintiff was provided with a copy of Local Rule 15.1 and another opportunity to amend his Complaint within thirty days of his acknowledged receipt of the Order. The Order emphasized that since plaintiff's amendment failed to conform to the format mandated by Local Rule 15.1, the Court was unable to determine exactly how plaintiff was amending his Complaint, noting that the [*6] proposed amendment included the defendants who had previously been dismissed, defendant Atkins, other unnamed special agents of the FBI, as well as, William Carpenter, U.S. Attorney for the District of Delaware and Kent A. Jordan, Assistant U.S. attorney.

Finally, on January 12, 1993, plaintiff filed another document titled "Amended Complaint Pursuant to Bivens Claim Against the Individual FBI Agents and the U.S. Attorney" (D.I. 56). Pursuant to this pleading, the action was instituted against the following defendants: Special Agent Donald Atkins, Jr., Special Agent Kenneth Stuller, Jr., U.S. Attorney William C. Carpenter and Special Agents of the FBI for the District of Delaware Unnamed.

On the same date, plaintiff filed a notice of change of address with the Court specifically advising the address at which all future communications and papers should be sent regarding this matter (D.I. 55).

Thereafter, on March 29, 1993, defendants filed a motion to dismiss and opening brief in support thereof with a number of exhibits attached (D.I. 58, 59). The basis of defendants' motion is that the statute of limitations operates against plaintiff's claims under the First, Fourth, Fifth [*7] and Eighth Amendments arising out of the seizure of his property, that plaintiff failed to perfect service on the individual FBI agents, therefore this Court lacks personal jurisdiction over the defendants, that the amendment fails to state a cognizable claim since it is devoid of any facts to impose liability against the individual defendants, that qualified immunity operates protect the individual defendants and since the amendment failed to comply with Local Rule 15.1, it should be dismissed.

In addition to filing their motion to dismiss, defendants also filed a motion to stay discovery on the basis of the immunity defense and pursuant to *Hunter v. Bryant, 116 L. Ed. 2d 589, 112 S. Ct. 534, 536 (1991)* and *Harlow v. Fitzgerald, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982)* (D.I. 60).

Since plaintiff failed to respond and was in violation of D.Del.L.R.7.1.1, an Order was entered on August 4, 1993 setting up a memorandum or brief schedule regarding defendants' outstanding motions (D.I. 62). Pursuant to that Order, a copy of it was to be sent to plaintiff via airmail at his current address in Berlin Germany as directed in his previous letter (D.I. 55) to the Court. [*8] Plaintiff was further required to acknowledge the receipt of this Order by signing, dating and returning to the Court the enclosed copy. According to the Court records, the two copies of that Order were sent via airmail to plaintiff. However, on August 20, 1993, copies of the Order of August 4, 1993 were returned as non-deliverable, despite being sent to the last address previously identified by plaintiff (D.I. 64).

Since the obligation rests with plaintiff to keep this Court properly advised of his location, and since it has been nine months since plaintiff filed his proposed Amended Complaint and over six months since defendants filed their motions, this matter is ripe for decision.

Facts

The basis of the claims raised in this matter result from the arrest of plaintiff and his business partner, Johann W. Zalud, on October 16, 1987 in Wilmington, Delaware in connection with bank fraud and conspiracy charges. On that same date, plaintiff consented to a search of his apartment located at the Plaza Apartments, his business office and automobiles (D.I. 59, Ex.C). At that time, plaintiff received a copy an itemized receipt for the property seized from him related to his arrest. A copy [*9] of the receipt for the property seized from his apartment was left at his residence (D.I. 59, Ex.D, receipts for items seized). As a result of the search, the personal property seized was used as evidence in the criminal matter against plaintiff. The property seized included U.S. currency, traveler's checks, money orders, camera, a Chevrolet van, binoculars, televisions, a video cassette recorder, airline tickets, business records, vehicle registrations, a driver's license and other documents pertaining to the identity of plaintiff, as well as, his business partner.

The unrefuted evidence shows that certain property was released or disposed of as follows.

Pursuant to the directions of Jack Willard, plaintiff's attorney, on November 7, 1987, Jeanne Hart took possession of miscellaneous personal items which included two leather jackets, a black leather carrying case, credit cards, business cards, auto club cards and binoculars and two cameras. Ms. Hart was designated by plaintiff pursuant to a power of attorney to retrieve his personal belongings. Since the time Ms. Hart received these items, until at least the execution of her affidavit in April 1992, she has retained the personal [*10] belongings which she took custody of at his request. Further, plaintiff was aware of the items which she has in her possession since, on more than one occasion, plaintiff had been provided with an inventory list (D.I. 59, Ex.E, aff. of Jeanne Hart).

Thereafter, on September 7, 1989, pursuant to Order of Restitution of this Court, the U.S. currency, money orders, traveler's checks and the Chevrolet van were released to the U.S. Marshals (D.I. 59, Ex.F) to make partial restitution to the Second National Federal Savings Bank and the Colonial National Bank, two of plaintiff's victims.

Pursuant to an Order dated March 5, 1991, plaintiff's motion requesting return of a number of items of personal property seized was denied (D.I. 59, Ex.G). How-ever, the government was given a reasonable amount of time to determine which of the items requested by plaintiff had no evidentiary value to the United States or other governmental entities, to determine which such items lacking evidentiary value plaintiff would be permitted to have in his possession while incarcerated by the Bureau of Prisons and to furnish the Court with a list of items falling into either of those categories. Thereafter, the Court [*11] would then consider plaintiff's motion with regard to the items on his list. Apparently, plaintiff made a further request to Mr. Jordan through a letter of December 1, 1991 to have certain property returned to a Jean Morris located in Wichita Falls, Texas. As a result, another order was issued by the Honorable Joseph J. Longobardi on March 11, 1992 authorizing the return of certain personalty to Jean Morris, plaintiff's designated recipient. Those items were two television sets, a VCR, two wallets, nail clippers and a handkerchief. On June 15, 1992, these items were released to Delaware Moving and Storage for shipment to plaintiff's designated recipient, Jean Morris (D.I. 59, Ex.G).

Of the property currently being held by the FBI, it primarily consists of personal identity documents regarding Mr. Ecke and his partner, Mr. Zalud. This personalty includes a driver's license of plaintiff, an auto registration for the Chevrolet van which was part of the restitution and had been owned by Dream Travel Club, airline tickets and business records of IET Corporation and Dream Travel Corporation.

Pursuant to plaintiff's latest filing, that is the document purporting to be an Amended Complaint, [*12] plaintiff is alleging that as a result of not receiving an inventory as he requested and the failure to release the airline tickets to him, he sustained damages in the amount of One Million Dollars ($ 1,000,000.00) along with court costs.

DISCUSSION

Standard of Review

Although defendants couch their motion as a motion to dismiss, referred to and relied upon in their brief are a number of exhibits, including the affidavit of Jeanne Hart, which are matters outside the pleadings. Therefore, the standard of review would be pursuant to Rule 56 for summary judgment.

*Federal Rules of Civil Procedure 56(c)* provides that a party is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Although the party seeking summary judgment always bears the initial responsibility of informing the

Court of the basis for its motion, and identifying those portions of the pleadings, papers and documents on file, including affidavits, which demonstrate the absence of a genuine issue of **[*13]** material fact, where the non-moving party opposing summary judgement has the burden of proof at trial on the issue for which summary judgment is sought, he must then make a showing sufficient to establish the existence of an element essential to his case. *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).* If the non-moving party fails to make such a showing, then the moving party is entitled to judgment as a matter of law. *Id at 322-23.*

"In other words [are] any genuine factual issues that properly can be resolve only by a finder of fact because they may reasonably be resolved in favor of either party." (Emphasis added). *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).*

Factual disputes that are irrelevant or unnecessary will not be counted. *Id. at 248.* The mere existence of a scintilla of evidence in support of the non-moving party will not prevent the grant of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-moving party on that issue. *Id. 249.* Mere speculation or conjecture **[*14]** by the non-moving party clearly cannot preclude the granting of summary judgment.

Proposed Amended Complaint

Plaintiff has been given repeated opportunities to allege a cause of action. He has been repeatedly provided direction from this Court regarding its procedures, including being provided a copy of the Local Rule 15.1. He has been directed to keep this Court advised of his address changes and location. In every regard, plaintiff has continually failed to follow this Court's instructions. Even taking into account plaintiff's pro se and foreign citizen status, extensive patience has been exercised by the Court. Further, based upon the papers and letters submitted by plaintiff to date, it is clear that he has a substantial understanding of English and is very capable in expressing himself in that language.

Plaintiff's last Amended Complaint (D.I. 56) again fails to meet the requirements of Local Rule 15.1. It appears that plaintiff is claiming that the defendants, through negligence, caused damage to plaintiff by failing to return personality or by sending certain personality to Jeanne Hart, an individual plaintiff now claims was not his authorized representative.

However, this **[*15]** amendment fails in all respects to comply with Local Rule 15.1. Generally, a single failure to comply with this Court's rules will not automati-

cally result in a denial of a motion to amend, however, plaintiff's continued failure to comply with the Rules and Orders of this Court over an extensive period of time leads to dismissal of his proposed Amended Complaint and as a result, dismissal of this action.

Failure to State a Cause of Action

Even if the Amended Complaint was allowed, it would not survive a motion to dismiss and does not survive defendants' motion for summary judgment. In his conclusory allegations, plaintiff asserts that his First, Fourth, Fifth and Eighth Amendments have been violated. But, there are no facts alleged to support this claim. As noted previously, at the most, plaintiff asserts that defendants were negligent in the handling of the seizure or property. No facts have been asserted to suggest improperly seized or retention of certain personalty regarding his underlying criminal charges and convictions to support either a Fourth Amendment claim or an action under the Fifth Amendment due process clause. The bald assertion of alleged violations under the First **[*16]** and Eighth Amendments are even more tenuous. No facts averred remotely suggest a violation of the free speech protection or indicate deliberate indifference or cruel and unusual punishment.

Although the "heightened specificity requirement" for civil rights complaints may have been modified by *Leatherman v. Tarrant County Narcotics Gov't., 122 L. Ed. 2d 517, 113 S. Ct. 1160 (1993),* a litigant under *Fed.R.Civ.P 8(a)(2)* is still required to provide a short plain statement of the claim that will give fair notice of what plaintiff's claim is and the grounds upon which it rests. Id. at 1163. Further, a claim for relief for a constitutional violation must be asserted. *Butz v. Economou, 438 U.S. 478, 57 L. Ed. 2d 895, 98 S. Ct. 2894 (1978)*

Actions based in negligence do not rise to a constitutional violation. *Daniels v. Williams, 474 U.S. 327, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986).*

Although a liberal policy has been adopted in favor of granting leave to amend to allow decisions on the merits whenever possible, such a policy is not without restraint. Frantz v. United States of America, C.A. No. 91-483-JLL (D. Del. February 10, 1992). Leave to amend **[*17]** is within the clear decision of the Court, which should be granted freely unless other factors, such as, undue delay, bad faith, dilatory motive, repeat failure to cure deficiencies, undue prejudice to the opposing party or futility of the amendment warrant denial. Id. at 182. An amendment to a complaint will be "futile" if it cannot withstand a motion to dismiss. *Jablonski v. Pan American World Airways, Inc., 863 F.2d 289, 292 (3d Cir. 1988).* As discussed above, plaintiff's proposed Amended Complaint would not survive a Rule 12 motion. For this additional reason, it should be dismissed.

Qualified Immunity

Although it has been long recognized that an action for damages may be appropriate where a government official abuses his office, qualified immunity exists to protect government officials from the personal costs of litigation and the resultant inhibiting affect such litigation would and can have on the proper discharge of their responsibilities. *Anderson v. Creighton, 483 U.S. 635, 638, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987); Harlow v. Fitzgerald, 457 U.S. 800, 814, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982); Lee v. Mihalich, 847 F.2d 66, 69 (3d Cir. 1988).* [*18] Therefore, government officials are protected from civil liability insofar as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow, 457 U.S. at 818.* Qualified immunity is freedom from suit, not just a liability defense. As a result, resolution of whether immunity applies is to be determined at the earliest possible stage in litigation. *Hunter v. Bryant, 116 L. Ed. 2d 589, 112 S. Ct. 534, 536 (1992); Mitchell v. Forsyth, 472 U.S. 511, 526, 86 L. Ed. 2d 411, 105 S. Ct. 2806 (1985).* The burden, therefore, rests on plaintiff to adequately allege and show the facts and circumstances known to the defendants establishing that no officer in defendants' respective positions could have reasonably believed that the conduct taken was lawful. *Anderson, 483 U.S. at 640-41.*

In the absence of any factual demonstration of violations of plaintiff's constitutional rights or allegations indicating a knowing constitutional violation, qualified immunity applies. There are no objective parameters alleged to suggest that defendants know or should have [*19] known that the search, seizure, retention and authorized release of plaintiff's property in connection with his arrest was improper. Rather, as shown by the affidavit of Jeanne Hart and the other exhibits attached to defendants' brief, there is unrefuted evidence to the contrary. The exhibits show that the conduct of defendants was consistent with the Orders of this Court and the directions provided by plaintiff and his counsel (D.I. 59, Exhibits). Therefore, under the circumstances, this matter should be dismissed.

Respondeat Superior

Plaintiff appears to attempt to add William Carpenter, then United States Attorney for this district as a defendant based upon the conduct of the other defendants for which he was somehow responsible. No specific direct or personal involvement in the conduct has been alleged against him. Since claims under § 1331 and Bivens are the federal counterpart of § 1983 actions, the law on collateral issues and defenses apply by analogy. *Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir. 1975).*

Repeatedly and unequivocally, the Third Circuit has rejected superior as the sole basis for liability under § 1983. *Gay v. Petsock, 917 F.2d 768, 771 (3d Cir. 1990),* [*20] *Rizzo v. Goode, 423 U.S. 362, 375, 46 L. Ed. 2d 561, 96 S. Ct. 598 (1976).* For liability under § 1983 to be imposed against a supervisory official, a plaintiff must 1) identify with particularity what the supervisory official failed to do that demonstrates his deliberate indifference and 2) demonstrate a close causal relationship between the identified deficiency and the ultimate injury. *Sample v. Diecks, 885 F.2d 1099, 1188 (3d Cir. 1989).* In the absence of any allegations showing acquiescence or personal involvement, any claim raised against defendant Carpenter should be dismissed on that basis alone.

Statute of Limitations/Fed.R.Civ.P.15

Defendants claim that plaintiff's Amended Complaint is time barred because the applicable statute of limitations for actions alleging constitutional violations brought against federal employees in their individual capacities is two years, relying on *Carr v. Town of Dewey Beach, 730 F. Supp. 591 (D.Del. 1990).* As a result, plaintiff's Amended Complaint does not relate back to the date of the filing of the original Complaint.

Since the remedy allowed pursuant to Bivens is a judicial one, [*21] rather than pursuant to a statute, no federal statute of limitations exists for actions alleging constitutional violations against federal officials. Bivens actions have been determined to be analogous to civil right actions brought against state officials under *42 U.S.C. § 1983. Wilson v. Garcia, 471 U.S. 261, 85 L. Ed. 2d 254, 105 S. Ct. 1938 (1985); Carlson v. Green, 446 U.S. 14, 21 n.6, 64 L. Ed. 2d 15, 100 S. Ct. 1468 (1980).* Since there is no specific federal statute of limitations for claims under the Civil Rights Act, the Supreme Court has held that *42 U.S.C. § 1988* directs federal courts to adopt the state statute of limitations for the most comparable cause of action, not inconsistent with federal law or policy. *Wilson v. Garcia, 471 U.S. at 266-67, 269.* Such claims are most comparable to common-law tort actions, and are subject to the state statute of limitations for personal injury claims. *Id. at 275, 280; Owens v. Okure, 488 U.S. 235, 102 L. Ed. 2d 594, 109 S. Ct. 573 (1989).* As a result, the relevant state statute of limitations for personal [*22] injury proceedings would determine the timeliness of an action brought under Bivens. *Goodman v. Lukens Steel Co., 482 U.S. 656, 662, 96 L. Ed. 2d 572, 107 S. Ct. 2617 (1987).* Therefore, Delaware's personal injury limitations period which is applicable to a § 1983 claim would also be applicable to a Bivens action. *Chin v. Bowen, 833 F.2d 21, 23-24 (2d Cir. 1987); VanStrum v. Lawn, 940 F.2d 406 (9th Cir. 1991); Bieneman v. City of Chicago, 864 F.2d 463, 469*

*(7th Cir. 1988), cert. denied, 490 U.S. 1080, 104 L. Ed. 2d 661, 109 S. Ct. 2099, 109 S. Ct. 2100 (1989).*

In Delaware, the relevant state statute of limitations on a personal injury claim is two years, pursuant to *10 Del. C. § 8119. Carr v. Dewey Beach, 730 F. Supp. 591 (D. Del. 1990).* The period begins to run when the injury is sustained, not when the full extent of the injury is known. *Chrisco v. Shafran, 525 F. Supp. 613 (D. Del. 1981).* The courts cannot extend the limitations period due to hardship or out of notions of fair pay. *Nose v. Rementer, 610 F. Supp. 1991 (D. Del. 1985).* **[\*23]**

Although state law determines the applicable limitations period for claims under § 1983, federal law decides the date of accrual. *Deary v. Three Unnamed Police Officers, 746 F.2d 185, 197, n.16 (3d Cir. 1984).* A claim under § 1983 accrues when the plaintiff knows or has reason to know of the injury that forms the basis of his cause of action. Id.; *Sandutch v. Muroski, 584 F.2d 252, 254 (3d Cir. 1992).*

However, the application of the two year statute of limitations must be examined in light *Fed. R. Civ. P. 15,* of the various Court Orders and plaintiff's Complaint and attempted amendments.

In the first final Order entered (D.I. 39), the Court, in addition to dismissing plaintiff's Federal Tort Claim action, dismissed without prejudice plaintiff's Bivens claim against the United States, the U.S. Department of Justice and the F.B.I. on the basis of sovereign immunity, the absence of a Bivens action existing against the United States and the absence of a Bivens action existing on the theory of respondeat superior. However, plaintiff was allowed to amend his Complaint to pursue a Bivens claim against the individual **[\*24]** F.B.I. agents, as named in his original Complaint, if the amendment was filed within twenty days of the Order. Otherwise, the failure to do so would result in the Bivens claims against the individual F.B.I. agents, including agent Atkins, being dismissed without prejudice. Therefore, the possible Bivens claims against agent Atkins was not dismissed to the extent that the body of plaintiff's original Complaint contained allegations against him. Those allegations can be found primarily at PP 3, 4, 7, 9-12 (D.I. 2). According to these allegations, plaintiff claims that somehow his constitutional rights were violated because the F.B.I. agents involved failed to make an accurate and correct inventory of the personality removed, damaged or lost some of plaintiff's personality seized, including $ 12,000.00 in cash and a Chevelet van which belonged to a Delaware corporation of which he was a principal and improperly returned the keys to his apartment at the Plaza to management without his knowledge or permission. Further, the unidentified agents allegedly informed the Plaza management to pack up the plaintiff's remaining property and remove it for management's own use.

On July **[\*25]** 22, 1992, almost thirty days after the original Order, because plaintiff failed to file an Amended Complaint, the Bivens claims against the F.B.I. agents were dismissed without prejudice (D.I. 42).

Subsequently, plaintiff filed a motion for reconsideration (D.I. 43). Because plaintiff claimed that he had not received the June 25 Order (D.I. 39), his motion for reconsideration was granted and plaintiff was given another thirty days from August 11, 1992 in which to amend his Complaint (D.I. 45).

On September 3, 1992, the Order of August 11, 1992 was modified to reflect plaintiff's current address and require an acknowledged receipt from him of both the August 11 and September 3 Orders (D.I. 46, 47). Plaintiff acknowledged receipt of said Orders and their enclosures on September 18, 1992. However, he failed to file an Amended Complaint within thirty days, but did file a document captioned as an Amended Complaint and a motion for appointment of counsel (D.I. 48). Although the Amended Complaint was not timely filed, failed to conform to D.Del.L.R. 15.1 and included parties previously dismissed, the Court allowed plaintiff another thirty days to file an Amended Complaint in the appropriate **[\*26]** formate, that is, consistent with L.R. 15.1. The Court also noted that the proposed Amended Complaint included previously unnamed parties, that is, Williams Carpenter and Kent Jordan.

Thereafter, on January 12, 1993, plaintiff filed the present Amended Complaint under consideration to assert a Bivens claim against certain individual F.B.I. agents (Atkins and Stuller), unnamed agents of the F.B.I. and William C. Carpenter, then the United States Attorney for this district. In the present proposed amendment, plaintiff asserts that the named and unnamed F.B.I. agents who engaged in the seizure of his property and defendant Carpenter by his orders for the seizure, are responsible for the loss and damage to plaintiff's personality. In the proposed amendment, plaintiff asserts that neither the named or unnamed defendants provided him with an appropriate inventory or responded to his request for such an inventory, retained airline tickets beyond the time limit for a reimbursement of their cost and negligently and improperly allowed Jeanne Hart to enter both his apartment and office and remove property without his permission. For this, plaintiff is requesting damages and for a proper inventory **[\*27]** of all property in the possession of defendants and that released to Ms. Hart.

Relation Back

Relation back of amendments is governed by *Fed. R. Civ. P. 15(c).* Although *Fed. R. Civ. P. 15(a)* provides

a liberal policy for amending pleadings, providing that leave to amend pleadings "shall be freely given when justice so requires," Rule 15(c) applies a more "stringent standard for a plaintiff seeking to relate back the joinder of a party." *Jordan v. Tapper, 143 F.R.D. 575, 580 (D.N.J. 1992).* Until December 1, 1991, Rule 15(c) provided, in relevant part:

> Whenever the claim or offense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the aforegoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining his defense [*28] on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

In *Schiavone v. Fortune, 477 U.S. 21, 106 S. Ct. 2379, 91 L. Ed. 2d 18 (1986),* the Supreme Court concluded that an amendment adding a new party to the action shall relate back to the original complaint only if the following four factors are satisfied:

> 1) The basic claim must have arisen out of the conduct set forth in the original pleading; 2) the party to be brought in must have received such notice that it will not be prejudice in maintaining its defense; 3) that party must or should have known that but for a mistake concerning identity, the action would have been brought against it; and, 4) the second and third requirements must have been fulfilled within the prescribed limitations period.

*Schiavone v. Fortune, 477 U.S. at 29, 106 S. Ct. at 2384.* Thus, the added party must have received actual notice of the action before the statute of limitations period ex-

pired. *Schiavone, 477 U.S. at 30-31, 106 S. Ct. at 2385* [*29]

*Fed.R.Civ.P.15(c)* was amended on December 1, 1991, altering the Schiavone holding. Rule 15(c) now reads in relevant part:

> An amendment of a pleading relates back to the date of the original pleading when:
>
> (1) Relation back is permitted by the law that provides the statute of limitations applicable to the action, or
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the aforegoing provision (2) is satisfied and, within the period provided by Rule 4(j) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudice in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of a party, the action would have been brought against the party. n1 (Emphasis added).

As a result of the amendment, relation-back is now governed by a modified standard. The significant difference [*30] between the superseded rule and revised Rule 15(c)(3) concerns the extension of time allowed for notification of an action. In amending the rule, "Congress altered the severe impact of the fourth requirement of Schiavone, . . . by providing that the intended party must have received notice within the period for service of the summons and complaint, rather than within the limitations period." *Jordan, 143 F.R.D. at 581.* Put simply, "an amended complaint which changes the name of the defendant will relate back to the filing of the original complaint if it arises out of the same conduct contained in the original complaint and the new party was aware of the action within 120 days of the filing of the original complaint." *Worthington v. Wilson, 790 F. Supp. 829, 833 (C.D.Ill. 1992).* Although revised Rule 15(c)(3) severely modifies the impact of the fourth requirement of

1994 U.S. Dist. LEXIS 392, *

Schiavone, it does not otherwise alter the first, second, or third Schiavone requirements. *Jordan, 143 F.R.D. at 585* n2

N1 In commenting on the revision, the Advisory Committee noted that

Paragraph (c)(3). This paragraph has been revised to change the results in *Schiavone v. Fortune, [477 U.S. 21, 106 S. Ct. 2379, 91 L. Ed 2d 18 (1976)]*, with respect to the problem of the misnamed defendant. An intended defendant who is notified of an action within the period allowed by Rule 4[j] for service of a summons and complaint may not under the revised Rule defeat the action on account of a defect in the pleading with respect to the defendant's name, provided that the requirements of clauses (A) and (B) have been met. If the notice requirement is met within the Rule 4[j] period, a complaint may be amended at anytime to correct a formal defect such as a misnomer or misidentification. On the basis of the text of the former Rule, the court reached a result in Schiavone v. Fortune that was inconsistent with the liberal pleading practices secured by Rule 8 . . .

In allowing a name-correcting amendment within the time allowed by Rule 4[j] . . ., this Rule allows not only the 120 days specified in that rule, but also any additional time resulting from any extension ordered by the court pursuant to that rule, as may be granted, for example, if the defendant is a fugitive from service of the summons. (Emphasis added).

(Citations omitted).

[*31]

n2 The first Schiavone factor was codified in Rule 15(c)(2), and the second and third Schiavone factors are virtually identical to Rule 15(c)(3)(A) and (B), thus, "the plaintiff must demonstrate that the new parties received actual notice of the plaintiff's claim and that each party knew or should have known that but for a mistake concerning identity, the suit would have been brought against them." *Jordan, 143 F.R.D. at 585.*

Retroactivity of Rule 15(c)

In its order of April 30, 1991 adopting the 1991 amendments to the Federal Rules of Civil Procedure, the Supreme Court stated:

the foregoing additions to and changes in the Federal Rules of Civil Procedure . . . shall take effect on December 1, 1991, and shall govern all proceedings in civil actions thereafter commenced, and insofar as just and practicable, all proceedings in civil actions then pending.

*Worthington, 790 F. Supp. at 834.* Although the original Complaint was filed prior to the 1991 revisions in the Federal Rules, the Amended Complaint was filed approximately [*32] three months after the revisions, on March 2, 1992 (D.I. 46). Thus, in line with the Supreme Court's instruction, justice requires that the Amended Complaint be governed by the modified version of Rule 15(c).

Application of State Law - Rule 15(c)(1)

Pursuant to revised *Fed.R.Civ.P. 15(c)(1)*, this Court must first examine Delaware state law to determine whether it permits relation back. *Jordan, 143 F.R.D. at 581.* Delaware Superior Court Rule 15 provides the basis for relation back of amendments. Although Delaware law clearly permits the relation back of amendments when attempting to add new parties pursuant to *Fed.R.Civ.P. 15*, Delaware Rule 15(c) is at odds with *Fed.R.Civ.P. 15(c)(3)* regarding the length of time provided for notification of the action. Delaware Rule 15 is virtually identical to former Federal Rule of Procedure 15 (prior to the 1991 amendments), in that it follows the four-prong test set forth in Schiavone. Marrow v. Gopez, C.A. No. 92C-01-102, Del Pesco, J. (Del. Supr. March 31, 1993).

Since the Delaware rule regarding relation back follows all of the Schiavone standards which the present

federal Rule 15(c) was adopted to [*33] modify, the state Rule 15(c) is "less forgiving" than the present federal rule. As a result, Rule 15(c)(1) does not provide a basis relation back of the proposed Amended Complaint since the statute of limitations as applied under Delaware law and relation back would be two years pursuant to *10 Del. C. § 8119.* Further, under § 8119, there are no relation back provisions. Therefore, analysis of the application of Rule 15(c)(3) must occur.

Rule 15(c)(3)

As noted previously, the critical difference between superseded Rule 15(c) and the revised Rule is the extension of time allowed for notification of the action. The time period is no longer limited within the statutory limitations period, but includes the time period allowed for service of summons and the complaint. However, the conduct alleged in the amended pleading must relate to and arise out of the same events and conduct alleged in the original complaint. Further, plaintiff must demonstrate that the new parties received actual notice of his claim and that each proposed added party knew or should have known that but for a mistake concerning identity, the action would have been instituted against them. Therefore, actual [*34] notice and knowledge of the mistaken identity must occur within the time period prescribed under new Rule 15(c)(3).

Defendants do not argue that plaintiff's proposed Amended Complaint does not arise out of the same "conduct, transaction or occurrence" as contained in the original Complaint. Both appear to relate to the seizure of personalty as a result of the search warrants executed on plaintiff's residence and business. n3 Both claim damages resulting from the alleged subsequent improper handling of that personalty. Therefore, the conditions of Rule 15(c)(2) have been met.

> n3 Plaintiff does not appear to dispute or allege any facts suggesting that the execution of the search warrants were improper. Nor does he allege any facts that the taken of the property pursuant to the search warrants was improper.

Although the proposed Amended Complaint meets the requirements of Rule 15(c)(2), in the circumstances where the amendment changes a party or the naming of a party, the conditions of Rule 15(c)(3)(A) and (B) must also [*35] be met. It is under these provisions that the applicable limitations period effects relation back.

The events relating to plaintiff's original claim arose as a result of the search warrants executed on October 16, 1987. Between that date and August 20, 1988, when plaintiff filed a federal tort claim with the Department of Justice, he attempted to locate the property seized from his residence and business. Plaintiff obviously was aware of a violation of his constitutional rights sometime prior to August 20, 1988 when he filed his administrative action (D.I. 59, Ex.A). His administrative claim not only mentioned defendant Atkins, but also was based upon the damages or loss of personal property relating to his arrest, the same allegations as raised in his original and proposed Amended Complaints. Plaintiff was required to institute his Bivens claim within two years from the date of the alleged constitutional violations. Although the statute of limitations period begins to run when the injury is sustained n4 and not when the full extent of the injury is known, even giving plaintiff the benefit of the doubt that his awareness of the injury did not occur until shortly before the [*36] filing of the administrative action, plaintiff had two years, at the latest from August 20, 1988, in which to bring his Bivens action against these defendants, or by no later than August 20, 1989.

> n4 That date is October 16, 1987. Using that date, then the two year limitation period would run to October 16, 1989.

Including the benefit of the 120 day rule for service, the proposed defendants must have received actual notice of the action by no later than December 18, 1990.

The original Complaint was filed on December 8, 1988. Service of the original Complaint on the United States Attorney for the District of Delaware occurred on June 18, 1990 (D.I. 21). The present Amended Complaint was filed on January 21, 1993. No service has been requested or made on any of the proposed defendants.

In his original Complaint, plaintiff does not assert a claim against defendants Stuller or Carpenter. In fact, the original Complaint fails to allege any constitutional violation against either of these defendants.

Although notice [*37] under Rule 15(c)(3) may be formal or informal, more than mere awareness of a lawsuit is necessary to constitute actual notice under the Rule. *Jordan v. Tapper, 143 F.R.D. 575, 586 (D. N.J. 1992),* citing *Edwards v. Occidental Chemical Corp., 892 F.2d 1442, 1447 (9th Cir. 1990), Keller v. Prince George's County, 923 F.2d 30, 33-34 (4th Cir. 1991).*

There has been no showing whatsoever that defendant Stuller was even aware of plaintiff's original action. Although defendant Carpenter may have been aware of the prior non-specific complaint against the Department of Justice, such notice does not constitute actual notice of the claims presently raised against him. *Jordan, 143 F.R.D. at 586.*

Further, plaintiff cannot satisfy Rule 15(c)(3)(B) regarding these defendants. The present Rule does not differ from prior Rule 15(c) which allowed adding a defendant not accurately identified in the original Complaint. However,

> Rule 15(c) was intended to protect a plaintiff when he mistakenly names a party and then discovers, after the relevant statute of limitations has run, [*38] the identity of the proper party. *Fed.R.Civ.P 15(c)* was never intended to assist a plaintiff who ignored or failed to respond in a reasonable fashion to notice a potential party, nor was it intended to permit a plaintiff to engage in piecemeal litigation.

*Jordan, 143 F.R.D. at 587,* citing, *Kilkenny v. Arco Marine, Inc., 800 F.2d 853, 857-58 (9th Cir. 1986); Unicure, Inc. v. Thurman, 97 F.R.D. 1, 6 (W.D. N.Y. 1982); Guitierrez v. Raymond Intern, Inc., 86 F.R.D. 684, 685 (S.D. Tex. 1980).*

Therefore, it is irrelevant whether the proposed party knew or should have known that the action would have been brought against him if there is lack of mistake in the identification of the proper party in the Complaint. *Jordan, 143 F.R.D. at 585.*

Clearly, a lawsuit against the Department of Justice is insufficient to impute to Attorney General Carpenter knowledge of his future status as a defendant. Similarly, an action against the Federal Bureau of Investigation and unidentified F.B.I. agents is inadequate to impute knowledge to S.A. Stuller. [*39] Plaintiff offer no grounds for why S.A. Stuller and Attorney General Carpenter should have been "uniquely aware that they were the parties in interest." *Doe v. Sullivan County, Tenn., 956 F.2d 545, 552 (6th Cir. 1992).* Rule 15(c) permits an amendment to relate back only where there has been an error made concerning the identity of a proper party and not where there is a lack of knowledge of the proper party. *Jordan, 143 F.R.D. at 588. Davis v. Frapolly, 742 F. Supp. 971, 973 (N.D. Ill. 1990)*

This Court granted plaintiff leave to amend his Complaint, but that does mean the defenses under Rule 15 to such an amendment do not apply. This Court had previously struck plaintiff's latest attempt to amend his Complaint for nonconformity to D.Del.L.R.15.1 (D.I. 51). "Although requirements of technical pleading and conformity with procedural rules should be viewed liberally when a litigant is acting pro se, the rules are not sus-

pended simply because the litigant is unrepresented by counsel. The pro se complainant must exercise reasonableness and good faith in prosecution of his claims." *Carter v. Three Unknown Police Officers, 112 F.R.D. 48, 52 (D. Del. 1986).* [*40]

This amendment proposed to add new parties, not to substitute new defendants for a mistakenly named defendant. No mistake was made concerning the identity of S.A. Stuller and Attorney General Carpenter. Nor does this involve a name correcting amendment as to defendants Stuller and Carpenter. Since plaintiff failed to meet the requirements of Rule 15(c) and did not properly file or perfect his Bivens action within the limitation period under this Rule, plaintiff's Amended Complaint should not be allowed and his action should be dismissed as to these defendants.

However, a different result occurs when applying Rule 15(c) to S.A. Atkins. Unlike the other defendants, S.A. Atkins was named in the body of the original Complaint. In fact, he was the only individual identified in the original pleading. Further, service of the original Complaint on behalf of the F.B.I. was accepted by this defendant. Therefore, there are facts to support that S.A. Atkins was aware of this action and the allegations relating to his conduct within the time period required under Rule 15(c)(3).

### Service of Process/Personal Jurisdiction

Before any federal court can exercise jurisdiction over a defendant, service [*41] of the summons as required under *Fed R. Civ. P. 4* must be met. *Omni Capital International, Ltd. v. Rudolph Wolff and Co., 484 U.S. 97, 104, 98 L. Ed. 2d 415, 108 S. Ct. 404 (1987).* In the present case, there no evidence in the file that plaintiff has made any attempt to serve the individual defendants with a copy of his Amended Complaint as required under the Federal Rules of Civil Procedure.

Pursuant to Rule 4, service of process on individual defendants who are officers of the United States can be accomplished in a variety of ways:

1. By delivering a copy of the summons and complaint to the individual personally. Rule 4(d)(1)

2. By leaving copies of the summons and complaint at the individual's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein. Rule 4(d)(1)

3. By delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process. Rule 4(d)(1).

4. By serving the United States and by sending a copy of the summons and of the complaint by registered or certified mail to the officer. Rule 4(d)(1)

5. By mailing a copy of the summons and the Complaint by first class mail, postage **[\*42]** prepaid to the person to be served along with two copies of the notice and acknowledgement and a return envelope, postage prepaid addressed to the sender. Rule 4(d)(2)(C).

In this circumstance, plaintiff only attempted service was by mail directed to William Carpenter at the United States Attorney's Office. No attempt whatsoever was made to serve the Amended Complaint on the F.B.I. agents named therein. Service of the Amended Complaint was required upon each of these defendants. *Fed.R.Civ.P.5(a)*.

As to what is proper service under Rule 4, in part depends upon the capacity in which the federal officer is being sued and the basis of plaintiff's claims. For example, when a plaintiff is seeking money damages from a federal officer in a Bivens action, service must be made under *Fed.R.Civ.P.4(d)(1)*. *Johnston v. Home, 875 F.2d 1415 (9th Cir. 1989)*. Other jurisdictions have held that *Fed.R.Civ.P.4(d)(5)* does not apply to Bivens suits. *Lewellen v. Morley, 875 F.2d 118 (7th Cir. 1989)*. Further, it has been recognized that although the United States Attorney's Office was properly served pursuant to *Fed.R.Civ.P.4(d)(4)*, such **[\*43]** service did not obviate the requirement of personal service under Rule 4(d)(1) when the action is in substance against a federal official in his individual capacity. *Delgado v. Federal Bureau of Prisons, 727 F.Supp. 24, 26 (D.C.D.C. 1989)*.

It is unclear from plaintiff's proposed Amended Complaint as to the capacity in which he has sued the individual F.B.I. agents. However, it is clear that plaintiff has failed to have them served either under Rule 4(d)(1), or under Rule 4(d)(5).

Plaintiff has made no attempt to have these defendants served and has provided no good cause for this failure. Plaintiff has not met the time limitations for service under *Fed.R.Civ.P.4(j)*. Although plaintiff did not receive this Court's Order of August 4, 1993 directing him to respond to defendants' motion, that was not due to the conduct of either the Court or defendants. Rather, it was due to plaintiff's failure to provide an updated address for receipt of mail. Therefore, failure to have the individual F.B.I. defendants properly served under Rule 4 is caused for dismissal of plaintiff's action. *National Impeachment Coalition v. U.S. Capitol Police, 1988 WL 33038 (D.C. **[\*44]** D.C. 1988)*.

Rule 41

Under *Fed.R.Civ.P.41(a)(2)* and (b), this Court may order dismissal of an action for failure to prosecute and/or for failure on the part of plaintiff to comply with its Orders. Pursuant to D.Del.L.R.41.1 in each case pending where no action has been taken for a period of three (3) months, this Court may, after reasonable notice, enter an Order dismissing the case, unless good reason for the inaction is given.

It has been almost a year since the filing of plaintiff's proposed Amended Complaint. Further, it has been almost ten months since the filing of defendants' motion to dismiss and brief in support thereof. During this time, there has been no response whatsoever from plaintiff, despite this Court's attempt to contact him. For this reason, this action should be dismissed.

For the reasons contained herein, defendants motion to dismiss shall be GRANTED and plaintiff's action should be DISMISSED.

An Order consistent with this Report and Recommendation shall follow.

LEXSEE 2002 U.S. DIST. LEXIS 4724

**BENJAMIN ELLEGOOD, Plaintiff, v. STANLEY TAYLOR, ROBERT SNYDER, DAVID HOLMAN and JANICE HENRY, Defendants.**

**Civil Action No. 01-213-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2002 U.S. Dist. LEXIS 4724*

**March 18, 2002, Decided**

**DISPOSITION:** [*1] Defendants' motion to dismiss the complaint for failure to state a claim pursuant to *Federal Rule of Civil Procedure 12(b)(6)* was granted in part and denied in part.

**LexisNexis(R) Headnotes**

**COUNSEL:** Benjamin Ellegood, Plaintiff, Pro se, Wilmington, Delaware.

Gregory E. Smith, Deputy Attorney General, State of Delaware, Department of Justice, Wilmington, Delaware, for Defendants.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

**MEMORANDUM OPINION**

Dated: March 18, 2002
Wilmington, Delaware

**ROBINSON, Chief Judge**

**I. INTRODUCTION**

On April 4, 2001, plaintiff Benjamin Ellegood filed this action against defendants Stanley Taylor, Robert Snyder, David Holman and Janice Henry alleging civil rights violations under *42 U.S.C. § 1983* in that inadequate medical care and the denial of recreation violated his Eighth and Fourteenth Amendment rights. (D.I. 2) Plaintiff subsequently amended his complaint, alleging that a denial of access to the courts violated his Fourteenth Amendment right to Due Process. (D.I. 3) Currently before the court is defendants' motion to dismiss the complaint for failure to state a claim pursuant to *Federal Rule* [*2] *of Civil Procedure 12(b)(6).* (D.I. 10) For the reasons stated below, defendants' motion is granted in part and denied in part.

**II. BACKGROUND**

At the time of filing, plaintiff was a pre-trial detainee n1 within the Delaware Department of Correction, being held at the Delaware Correctional Center in Smyrna, Delaware. (D.I. 11 at P 1) Plaintiff has a myriad of health concerns and was housed permanently in the infirmary. (D.I. 2 at 3) He is a diabetic, needing insulin twice a day. (Id.) Plaintiff is also in need of a prosthesis for his left leg. (Id.) Plaintiff alleges that, before entering the prison system, he was under the care of Dr. D. Singson at Gilpin Medical Center for his diabetic condition and had physical therapy three times a week. (Id.) Upon being incarcerated on December 8, 2000, plaintiff contends that the "prison [was] not addressing therapy or pain medication that [he] was getting in [the] street under Doctor D. Singson." (Id.) Plaintiff states that all he does is "eat and sleep" and is suffering pain. (Id.)

n1 The relevant constitutional provision is not the Eighth Amendment but the Due Process Clause of the Fourteenth Amendment. "The State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." *Ingraham v. Wright, 430 U.S. 651, 671 n.40, 51 L. Ed. 2d 711, 97 S. Ct. 1401 (1977).* Case law has established, however, that pre-trial detainees are afforded essentially the same level of protection under the Fourteenth Amendment; therefore, an Eighth Amendment analysis is still appropriate. See, e.g., *City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 77 L. Ed. 2d 605, 103 S. Ct. 2979 (1983).*

[*3]

Plaintiff further alleges that he has been denied access to the courts in that he was not permitted to go to the law library from the infirmary and was told that he would have to write a law library slip to get anything from the law library. (D.I. 3 at 1) However, plaintiff contends that there were no slips available or that he does not know where to look. (Id.) Plaintiff further alleges that he has been denied recreation time by defendant Holman. (Id. at letter to Stanley Taylor, Jan. 16, 2001)

### III. STANDARD OF REVIEW

In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. See *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir. 1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." Id. Claims may be dismissed pursuant to a Rule 12(b)(6) motion only [*4] if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. See *Conley v. Gibson*, 355 U.S. 41. 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). Where the plaintiff is a pro se litigant, the court has an obligation to construe the complaint liberally. See *Haines v. Kerner*, 404 U.S. 519, 520-521, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972); *Gibbs v. Roman*, 116 F.3d 83, 86 n.6 (3d Cir. 1997); *Urrutia v. Harrisburg County Police Dep't*, 91 F.3d 451, 456 (3d Cir. 1996). The moving party has the burden of persuasion. See *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

### IV. DISCUSSION

#### A. Plaintiff's Inadequate Medical Care Claim

To state a violation of the Eighth Amendment right to adequate medical care, plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976); accord *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990). Plaintiff must demonstrate: (1) that he had a serious [*5] medical need, and (2) that the defendant was aware of this need and was deliberately indifferent to it. See *West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978); see also *Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir. 1987). Either actual intent or recklessness will afford an adequate basis to show deliberate indifference. See *Estelle*, 429 U.S. at 105.

The seriousness of a medical need may be demonstrated by showing that the need is "'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quoting *Pace v. Fauver*, 479 F. Supp. 456, 458 (D.N.J. 1979)). Moreover, "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." Id.

As to the second requirement, an official's denial of an inmate's reasonable requests for medical treatment constitutes deliberate indifference if such denial subjects the inmate to undue suffering or a threat [*6] of tangible residual injury. 834 F. Supp. at 346. Deliberate indifference may also be present if necessary medical treatment is delayed for non-medical reasons, or if an official bars access to a physician capable of evaluating a prisoner's need for medical treatment. Id. at 347. However, an official's conduct does not constitute deliberate indifference unless it is accompanied by the requisite mental state. Specifically, "the official [must] know . . . of and disregard . . . an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994). While a plaintiff must allege that the official was subjectively aware of the requisite risk, he may demonstrate that the official had knowledge of the risk through circumstantial evidence and "a fact finder may conclude that an . . . official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842.

The law is clear that mere medical malpractice is insufficient [*7] to present a constitutional violation. See *Estelle*, 429 U.S. at 106, *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993). Prison authorities are given extensive liberty in the treatment of prisoners. See *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979); see also *White*, 897 F.2d at 110 ("Certainly no claim is stated when a **doctor** disagrees with the professional judgment of another doctor. There may, for example, be several acceptable ways to treat an illness.") (emphasis in original). The proper forum for a medical malpractice claim is in state court under the applicable tort law. See *Estelle*, 429 U.S. at 107.

In the case at bar, plaintiff does not claim that he has been denied medication or therapy for his condition. Rather, plaintiff alleges that the treatment he received in prison was not the treatment prescribed by Dr. Singson. (D.I. 2 at 3) "Courts will not 'second-guess the propriety or adequacy of a particular course of treatment [which]

remains a question of sound professional judgment.'" *Boring*, 833 F.2d at 473 (citing *Pierce*, 612 F.2d at 762) [*8] "Where the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim." *Norris v. Frame*, 585 F.2d 1183, 1186 (3d Cir. 1978) (citing *Roach v. Kligman*, 412 F. Supp. 521 (E.D. Pa. 1976)). Plaintiff's challenge to the medical treatment that he received does not rise to a constitutional violation, as plaintiff alleges only the denial of a specific course of treatment, and fails to suggest deliberate indifference by defendants. Thus, plaintiff fails to state a claim for inadequate medical care pursuant to the Eighth Amendment.

### B. Plaintiff's Access to Court Claim

It is well established that prisoners have a constitutional right of access to the court. "To state a claim that his constitutional right to access the court was violated, plaintiff must allege facts demonstrating that defendants deliberately and maliciously interfered with his access to the courts, and that such conduct materially prejudiced a legal action he sought to pursue." *Smith v. O'Connor*, 901 F. Supp. 644, 649 (S.D.N.Y. 1995); see *Morello v. James*, 810 F.2d 344, 347 (2d Cir. 1987). [*9]

The fundamental constitutional right of access to the courts requires prison authorities to provide prisoners with adequate law libraries or adequate assistance with the preparation and filing of meaningful legal papers. See *Bounds v. Smith*, 430 U.S. 817, 828, 52 L. Ed. 2d 72, 97 S. Ct. 1491 (1977). However, "the Constitution does not require that prisoners . . . be able to conduct generalized research, but only that they be able to present their grievances to the courts." *Lewis v. Casey*, 518 U.S. 343, 359, 135 L. Ed. 2d 606, 116 S. Ct. 2174 (1996). Therefore, an inmate must demonstrate that he has, or will, suffer actual harm. See generally *id*. In this case, plaintiff fails to allege that he has suffered, or will suffer, harm caused by an alleged denial of access to the courts. Plaintiff's claim must fail pursuant to Rule 12(b)(6).

### C. Plaintiff's Denial of Recreation Claim

Because plaintiff was a pre-trial detainee at the time his claims arose, they are governed by the Due Process guarantees of the Fourteenth Amendment. See *Thompson v. County of Medina*, 29 F.3d 238, 242 (6th Cir. 1994). Due process requires that a "detainee [*10] may not be punished prior to an adjudication of guilt." *Bell v. Wolfish*, 441 U.S. 520, 535, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979). The government may detain an individual; the necessary inquiry is whether the conditions and restrictions of the detention amount to punishment. *Id.* at 536-37. "A court must determine whether a confinement . . . restriction is punitive by weighing the evidence that it is intended to punish, purposeless, or arbitrary against the possibility that it is 'an incident of some other legiti-

mate governmental purpose,' such as 'maintaining institutional security and preserving internal order.'" *Simmons v. City of Phila.*, 947 F.2d 1042, 1068 (3d Cir. 1991) (quoting *Bell*, 441 U.S. at 538, 546)).

The denial of exercise or recreation can result in a constitutional violation. See *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985). See, e.g., *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979) (finding Eighth Amendment violation where some prisoners were completely denied exercise and remaining population was limited to less than five hours of exercise per week) [*11] Indeed, regular outdoor exercise is important to the physical and psychological well being of inmates. See *Frazier v. Ward*, 426 F. Supp. 1354, 1367-69 (N.D.N.Y. 1977) However, the lack of exercise can only rise to a constitutional level "where movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened . . . ." *Id.* A constitutional violation will occur when the deprivation of exercise occurs for a "prolonged period of time and the plaintiff can demonstrate a tangible physical harm which resulted from the denial of exercise." *Castro v. Chesney*, 1998 U.S. Dist. LEXIS 17278, No. 97-4983, 1998 WL 767467, at *12 (E.D. Pa. Nov. 3, 1998). In order to demonstrate a deprivation of the constitutional right to exercise, an inmate must still meet the Eighth Amendment requirements and show deliberate indifference on the part of prison officials. See generally *Farmer*, 511 U.S. 825, 128 L. Ed. 2d 811, 114 S. Ct. 1970.

In the present case, plaintiff complains of what appears to be the complete denial of recreation for a period of at least four months. (D.I. 2) Accepting as true all of the facts alleged in the complaint, the [*12] court finds that such a limitation on exercise may be harmful to a prisoner's health and, if so, would amount to "cruel and unusual" punishment. Therefore, defendants' motion to dismiss plaintiff's denial of recreation claim must be denied. n2

> n2 Attached to plaintiff's complaint is a memorandum from defendant Holman stating that unsentenced inmates housed in the infirmary, unlike sentenced inmate patients, are not entitled to outside recreation. (D.I. 2) Based on the record presented at this stage of the proceedings, the court is unable to assess whether this policy is instituted for a legitimate governmental purpose or to maintain security.

### D. Defendants' Respondeat Superior Defense

Defendants contend that they cannot be held liable based upon their supervisory positions. (D.I. 11 at PP 8-

9) The Third Circuit has stated that the standard for liability of supervisory public officials is no less stringent than the standard of liability for the public entities that the officials serve. See *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). **[*13]** In either case, a person cannot be the moving force behind a constitutional violation of a subordinate unless that person has exhibited deliberate indifference to the plight of the person deprived. See id. (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1989), *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 902 (1st Cir. 1988)).

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 n.3, 68 L. Ed. 2d 420, 101 S. Ct. 1908 (1981), *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976)). Personal involvement can be established through allegations of either personal direction or actual knowledge and acquiescence (deliberate indifference); however, such allegations must be made with particularity. See id. But see *Boykins v. Ambridge Area Schl. Dist.*, 621 F.2d 75, 80 (3d Cir. 1980) (holding civil rights **[*14]** complaints adequate when time, place and persons responsible are stated); *Hall v. Pa. State Police*, 570 F.2d 86, 89 (3d Cir. 1978) (same).

The Supreme Court has held that supervising officials do not violate the constitutional rights of victims of misconduct unless they have had an affirmative part in the misconduct. See *Rizzo v. Goode*, 423 U.S. 362, 377, 46 L. Ed. 2d 561, 96 S. Ct. 598 (1976). The Third Circuit has also required that supervising officials play an affirmative role in violating the plaintiff's rights and that an official's misconduct "cannot be merely a failure to act." *Commonwealth of Pa. v. Porter*, 659 F.2d 306, 336 (3d Cir. 1981).

Plaintiff has shown insufficient facts to suggest that defendants Taylor, Snyder and Henry had actual knowledge of his concerns of civil rights violations. Therefore, these defendants cannot be held liable under the theory of respondeat superior. However, there are sufficient allegations of record (D.I. 2 at 3, memorandum from D. Holman) to suggest both personal involvement and actual knowledge, and acquiescence without explanation of a legitimate justification, by defendant Holman. **[*15]** Therefore, defendant Holman may be held liable under the theory of respondeat superior.

### E. Defendants' Qualified Immunity Defense

Defendants contend that they cannot be held liable in their individual capacities under the doctrine of qualified immunity (D.I. 11 at P 10). Government officials performing discretionary functions are immune from liability for civil damages when their conduct does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982). A right is "clearly established" when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987); accord *In re City of Phila. Litig.*, 49 F.3d 945, 961 (3d Cir. 1995).

When analyzing a qualified immunity defense, the court must first ascertain "whether plaintiff has [alleged] a violation of a constitutional right at all." *Larsen v. Senate of the Commonwealth of Pa.*, 154 F.3d 82, 86 (3d Cir. 1998). **[*16]** Next, the court must inquire whether the right was "'clearly established' at the time the defendants acted." *In re City of Phila. Litig.*, 49 F.3d at 961 (quoting *Acierno v. Cloutier*, 40 F.3d 597, 606 (3d Cir. 1994)). Finally, the court must determine whether "'a reasonable person in the official's position would have known that his conduct would violate that right.'" *Open Inns, Ltd. v. Chester County Sheriff's Dep't*, 24 F. Supp. 2d 410, 419 (E.D. Pa. 1998) (quoting *Wilkinson v. Bensalem Township*, 822 F. Supp. 1154, 1157 (E.D. Pa. 1993) (citations omitted)). If on an objective basis "'it is obvious that no reasonably competent [official] would have concluded that [the actions were lawful],'" defendants are not immune from suit; however, "'if [officials] of reasonable competence could disagree on this issue, immunity should be recognized.'" *In re City of Phila. Litig.*, 49 F.3d at 961-62 (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986)).

In the case at bar, plaintiff has sufficiently stated a claim for an Eighth Amendment cruel and unusual punishment **[*17]** violation. Also, at the time of the events at issue, plaintiff's Eighth Amendment right against cruel and unusual punishment was clearly established. Construing the complaint in favor of plaintiff, the court finds that defendants are not entitled to qualified immunity at this time.

### F. Defendants' Eleventh Amendment Immunity Defense

Defendants contend that they cannot be held liable in their official capacities under the Eleventh Amendment. (D.I. 11 at PP 6-7). "In the absence of consent, a suit [in federal court] in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 79 L. Ed. 2d 67, 104 S. Ct. 900 (1984). This preclusion from suit includes state officials when "the state is the real, substantial party in interest." *Id.* at 101 (quoting *Ford*

*Motor Co. v. Dep't of Treasury, 323 U.S. 459, 464, 89 L. Ed. 389, 65 S. Ct. 347 (1945))* "Relief sought nominally against an [official] is in fact against the sovereign if the decree would operate against the latter." Id. (quoting *Hawaii v. Gordon, 373 U.S. 57, 58, 10 L. Ed. 2d 191, 83 S. Ct. 1052 (1963))* [*18] A State, however, may waive its immunity under the Eleventh Amendment. Such waiver must be in the form of an "unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment." *Ospina v. Dep't of Corrs., 749 F. Supp. 572, 578 (D. Del. 1990)* (quoting *Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 n.1, 87 L. Ed. 2d 171, 105 S. Ct. 3142 (1985))* Because the State of Delaware has not consented to plaintiff's suit or waived its immunity, the Eleventh Amendment protects defendants from liability in their official capacities.

## V. CONCLUSION

For the reasons stated, defendants' motion to dismiss is granted with respect to all claims except plaintiff's claim of denial of recreation against defendant David Holman in his individual capacity. An appropriate order shall issue.

## ORDER

At Wilmington this 18th day of March, 2002, consistent with the memorandum opinion issued this same day;

IT IS ORDERED that defendants' motion to dismiss (D.I. 10) is granted with respect to all claims except plaintiff's claim of denial of recreation against defendant David Holman in his [*19] individual capacity.

IT IS FURTHER ORDERED that:

1. All motions to join other parties and amend the pleadings shall be filed on or before **April 15, 2002.**

2. Discovery shall be completed on or before **June 17, 2002.**

3. All dispositive motions shall be filed on or before **July 15, 2002.** Answering briefs shall be filed on or before **August 15, 2002.** Reply briefs may be filed on or before **August 29, 2002.**

Sue L. Robinson

United States District Judge

LEXSEE 1982 DEL. SUPER. LEXIS 976

**Andrea Joyner v. State of Delaware**

**No. N-80-09-0435FC**

**Superior Court of Delaware**

*1982 Del. Super. LEXIS 976*

**September 29, 1981, Submitted
January 14, 1982, Decided**

**COUNSEL: [*1]**

Eugene J. Maurer, Jr., Esq., 1215 King Street, Wilmington, DE 19801; H. Kemp Vye, III, Esq., Deputy Attorney General, Department of Justice, 820 N. French Street, Wilmington, DE 19801

**OPINIONBY:**

O'HARA

**OPINION:**

ROBERT C. O'HARA, JUDGE

UNREPORTED OPINION

This letter is intended as the Court's decision in an appeal by Andrea Joyner ("appellant"), who was adjudicated delinquent in Family Court on the basis of conduct which would have been a violation of 11 Del. C. § 608 (Offensive Touching) had it been committed by an adult.

The related facts are as follows:

A fight had just been broken up in the halls of Talley Junior High School when a teacher, Ms. Undercaufler, requested the 50-75 students, who were still gathered in the halls, to leave and go to their classrooms. The teacher indicated that as the appellant left, she laughed at her in a defiant, belittling manner in front of the other students, challenging her authority to disperse the group. At that point, the teacher grabbed the appellant by her coat and then by the neck and asked, "Do you think that is funny?" Appellant admits laughing but not at the teacher. She maintains that she asked the teacher to let go and then [*2] she was not immediately released, she struck the teacher one time in a reflex action. Appellant testified on cross-examination, "I felt bad, because I knew I was wrong, but I didn't know what to do." It was for this striking that appellant was found delinquent.

With the appellant's admission to the act, the only issue before the Family Court was whether the teacher had any authority to grab hold of the student. The teacher testified that she felt she was in a mob-control situation with a volatile crowd and her immediate action was necessary to prevent the students from getting out of hand. The Family Court found that *11 Del. C. § 468* can be used offensively as well as defensively as authority to justify a teacher's actions. The Family Court found that "[the] teacher obviously has the same authority to grab and hold a student for offensive purposes as he does for defensive purposes."

The Family Court rejected the appellant's argument that *11 Del. C. § 469* controlled in that the teacher was negligent in her beliefs. The Family Court found that even if the teacher was incorrect in her conclusion, it does not necessarily follow that she was negligent in her major [*3] premise. Looking at the testimony presented to it, the Family Court concluded that the teacher was not negligent and that she had authority to grab the juvenile as she did. The appellant was thereby not justified in striking the teacher and was guilty of Offensive Touching. The only issue raised in this appeal was whether the Family Court applied the proper standard in evaluating the conduct of the teacher. The appellant correctly asserts that the standard applied by the Family Court (*11 Del. C. § 468*) has to do with the defense of justification to criminal liability. Obviously, § 468 applies by its terms only to situations where the defense is raised in response to a criminal prosecution of the person raising the defense. Under the present facts, the section would apply if the teacher had been charged criminally for her behavior and was now raising this justification defense. It follows, therefore, that the Family Court erroneously relied upon *11 Del. C. § 468* as authority for the teacher's offensive actions in controlling and disciplining the student.

1982 Del. Super. LEXIS 976, *

The appellant urges that the appropriate standard against which to evaluate the conduct of the teacher is the New Castle [*4] County School District Student Code of Conduct which was in effect at the time of the incident. As the appellant herself states, this Code simply "establishes a comprehensive set of guidelines purporting to govern the relationship inter se between students and teachers in all phases of the academic environment." These guidelines are by no means the legal authority or standard for teachers for controlling and disciplining students.

The standard authority for teachers to control the behavior of students is stated in *14 Del. C. § 701*. Section 701 reads in pertinent part:

"Every teacher and administrator in the public schools of this State shall have the right to exercise the same authority as to control, behavior and discipline over any pupil during any school activity as the parents or guardians may exercise over such pupils."

Accordingly, in Delaware, a teacher and/or administrator stands in loco parentis to pupils under his or her charge for disciplinary action, ". . .at least for purposes which are consistent with the need to maintain an effective educational atmosphere." State v. Baccino, Del. Super., 282 A.2d869 (1971). The law has always [*5] given parents or one standing in loco parentis wide latitude as to the use of any reasonable means necessary to further their duty to educate, train, and discipline their offspring. "A parent, or one standing in loco parentis, has the right to use reasonable force to discipline a child, and what constitutes reasonable force under the circumstance is a fact issue for determination by the trier of the facts." *State v. Rigler, Del. Super., 266 A.2d 887 (1970)*.

Having set out the appropriate standard to be applied to the conduct of the teacher here in issue, the remaining question is whether the Family Court's application of *11 Del. C. § 468*, rather than *14 Del. C. § 701*, was reversible error. In effect, § 468 states that if a teacher believes that force is necessary to discipline a student such force must be reasonable and to such a degree as would be permitted by the parent or guardian of the student under the given circumstances. Although § 468 is designed to be used for defensive purposes the standard set out in that section is essentially the same as that found in *14 Del. C. § 701*. Thus, a teacher must meet the same standard of conduct when grabbing [*6] and holding a student for offensive purposes as he does for defensive purposes. Reversible error was not committed when the Family Court applied the appropriate standard in evaluating the respective actions of the teacher although citing the incorrect section of the Code as authority for that standard. The Family Court found that the teacher was not negligent in believing that force was necessary and that "she had the authority to grab the juvenile as she did." The Family Court's adjudication of delinquency should be affirmed.

IT IS SO ORDERED.

LEXSEE 2005 U.S. APP. LEXIS 17271

### LANCE W. MARTIN, Appellant v. RED LION POLICE DEPT.; RED LION BOROUGH; MARK R. PRICE; YORK HOSPITAL; PAUL R. STAUFFER; DANIEL D. DOWD, JR.; ROBERT C. ELSER; LORI YOST; W. H. HUGHES

### NO. 04-4454

### UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

### *2005 U.S. App. LEXIS 17271*

### August 1, 2005, Submitted Under Third Circuit LAR 34.1(a)
### August 16, 2005, Filed

**NOTICE:** [*1] RULES OF THE THIRD CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** On Appeal From the United States District Court For the Middle District of Pennsylvania. (D.C. Civ. No. 00-cv-01622). District Judge: Honorable James F. McClure, Jr. *Martin v. Red Lion Police Dep't, 276 F.3d 578, 2001 U.S. App. LEXIS 24634 (3d Cir. Pa., 2001)*

**LexisNexis(R) Headnotes**

**COUNSEL:** LANCE W. MARTIN, Appellant, Pro se, Baltimore, MD.

For RED LION POL DEPT, BOROUGH OF RED LION, MARK PRICE, W. H. HUGHES, Appellees: Cheryl L. Kovaly, Lavery, Faherty, Young & Patterson, Harrisburg, PA.

For YORK HOSPITAL, PAUL R. STAUFFER, Appellees: Christopher A. Stump, Stevens & Lee, Lancaster, PA.

For DANIEL D. DOWD, JR., D.O., Appellee: Christopher A. Stump, Todd R. Bartos, Stevens & Lee, Lancaster, PA.

For ROBERT C. ELSER, Appellee: Susan V. Metcalfe, McNees, Wallace & Nurick, Harrisburg, PA.

**JUDGES:** Before: SLOVITER, BARRY and FISHER, Circuit Judges.

**OPINION:** PER CURIAM.

Lance W. Martin, proceeding *pro se* and *in forma pauperis*, filed a civil action on events that transpired after he drove into a parked car on June 28, 1998. In his amended complaint, he alleged that a Red Lion police officer, Mark R. Price, arrested [*2] him and took him to York Hospital, where, under the care of Drs. Paul R. Stauffer and Daniel D. Dowd, Jr., he was examined, involuntarily committed for severe mental illness, restrained, sedated with morphine, and held until July 3, 1998. He claimed that, during his hospital stay, his blood was drawn for laboratory tests over his refusal, and the results were turned over to the allegedly ill-trained Officer Price, who presented a search warrant with the permission of Red Lion Chief of Police W.H. Hughes. Martin contended that he reviewed his medical records on July 10, 1998. *See* Supp. App. at 75, P 19. However, he also alleged that he did not learn that his blood had been tested or that the laboratory results of his blood testing had been turned over to the police until his September 21, 1998 preliminary hearing on D.U.I.-related charges n1 stemming from the June 28, 1998 accident. *See id.* at 75-6, PP 19-21.

n1 The charges were resolved with a grant of *nolle prosquei* and a dismissal of the D.U.I. charge, and a dismissal with prejudice of the careless driving charge in return for Martin entering a plea of guilty to a public drunkenness charge. Martin did not win a favorable termination of the charges against him, *see Hilfirty v. Shipman, 91 F.3d 573, 575 (3d Cir. 1996)*; however, as the District Court suggested in its Order of May 15, 2002, and under the particular circumstances of Martin's prosecution, *Heck v. Humphrey, 512 U.S. 477, 129 L. Ed. 2d 383, 114*

S. Ct. 2364 (1994), does not bar Martin's claims, because they do not put the validity of his conviction into question. See Simpson v. Rowan, 73 F.3d 134, 136 (7th Cir. 1995) (holding that claims relating to an illegal search or an improper arrest are not barred by Heck when they do not undermine the validity of a conviction).

[*3]

Two groups of defendants, the hospital defendants and the police defendants (as defined in the District Court's Memorandum & Order), filed motions to dismiss Martin's amended complaint. The only remaining defendant, n2 Robert C. Elser, Ph.D, described in Martin's amended complaint as the Director of Clinical Chemistry and Immunochemistry at York Hospital, and as Stauffer and Dowd's supervisor, asserted defenses in his answer. The District Court granted the motions to dismiss, holding that Martin filed many claims beyond the applicable statute of limitations and otherwise failed to state a claim. The District Court also dismissed all claims against Elser pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Martin appeals. Because the District Court properly dismissed all claims in Martin's amended complaint, we will affirm.

n2 On Martin's motion, Lori Yost was dismissed as a defendant in May 2002.

Martin filed his lawsuit more than two years after many of his claims accrued; therefore, the applicable [*4] statute of limitations barred much of his suit. Martin's claims made pursuant to 42 U.S.C § 1983, as well as his state law claims, were governed by 42 Pa. C.S.A. § 5524, Pennsylvania's two-year statute of limitations for tort actions. See Wilson v. Garcia, 471 U.S. 261, 276, 85 L. Ed. 2d 254, 105 S. Ct. 1938 (1985). They accrued when he knew or should have known of the injuries on which his claims are based. See Sameric Corp. v. Phila., 142 F.3d 582, 599 (3d Cir. 1991). Even if the administration of morphine blurred his awareness or his memory of how he was treated at the hospital, as he alleged, see Supp. App. at 76, P 20, at the time of his discharge from the hospital, Martin knew that he had been held at the hospital. At the very latest, he knew, or could have learned, about his admission, and mental health commitment, to the hospital, and the nature of his treatment, such as the use of restraints, at least some of the blood testing, and the medication with morphine, when he reviewed his medical records on July 10, 1998. See Supp. App. at 75, P 19. See also id. at 85-7 (medical records) ("We did order [*5] stable trauma labs ... [and they] were ultimately performed."). Therefore, many of Martin's claims arising from his treatment, read broadly as claims for battery, conspiracy to commit battery, and false imprisonment, were time-barred at the time he first filed his lawsuit on September 20, 2000. Despite his arguments to the contrary, Martin did not make allegations that justify tolling the statute of limitations on equitable grounds or because of fraudulent concealment. In fact, the untimeliness of many of Martin's claims was apparent on the face of his complaint.

It is possible, at least from the face of the complaint, that Martin is within two years of learning about the testing of his blood for a blood alcohol level, and the remittal of his laboratory test results to the police. However, he failed to state a claim relating to these events. His allegations may be liberally construed as claims of violations of the Fourth Amendment and Pennsylvania's Art. I, § 8, and claims of a conspiracy to violate his federal and state constitutional rights and his rights under the Pennsylvania Mental Health Laws of confidentiality, see 50 Pa. C.S.A. § 7111.

Martin [*6] cannot show an unreasonable search and seizure in violation of the Fourth Amendment because Price allegedly required hospital personnel to test Martin's blood for blood alcohol content and turn over the results. Under the Fourth Amendment, a blood test must be reasonable, which means that an officer must have probable cause to require it, and it must be completed in a reasonable manner. See Schmerber v. California, 384 U.S. 757, 768, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966). There was probable cause to require a blood test. In his amended complaint, Martin conceded that he struck a parked car while driving. See Supp. App. at 69, P 9. He relied on hospital records in which hospital personnel described him as clinically intoxicated, with alcohol on his breath. See id. at 85-6. There was no allegation that the testing was not conducted in a reasonable manner. In addition, Price presented a search warrant before the blood test results were given to him. See Supp. App. at 72-3, P 15. Because Martin did not state a claim for a Fourth Amendment violation against Price, the Fourth Amendment claim against Hughes, the Red Lion Borough, and the Red Lion Police Department also failed. [*7] n3 Similarly, because of the absence of a predicate violation of the Fourth Amendment, Martin did not state a claim for conspiracy to violate his Fourth Amendment rights.

n3 In addition, the Red Lion Police Department, as the sub-division of defendant Red Lion Borough through which the Red Lion Borough fulfills its policing functions, was not a proper defendant in an action pursuant to 42 U.S.C. § 1983. See Johnson v. City of Erie, 834 F. Supp.

*873, 878-79 (W.D. Pa. 1993)* (holding that a municipal police department, without an identity separate from the municipality of which it is a part, is not a proper defendant in a *§ 1983* action).

Martin also did not state a conspiracy claim based on an alleged violation of the Pennsylvania Mental Health Laws of confidentiality, *50 Pa. C.S.A. § 7111*, on the ground that some or all of the hospital defendants released Martin's blood test results to the police. Pennsylvania state law immunizes the hospital [*8] defendants from liability for taking blood from Martin, because there was probable cause to believe he had been driving under the influence. *See 75 Pa. C.S.A. §§ 1547(j) & 3755(b) (2005). See also id.* at *§ 3755(a)* (imposing a duty to withdraw blood in potential D.U.I. cases). His allegations of conspiracy, as related to this claim and throughout his amended complaint, are conclusory, in any event.

As the District Court concluded, assuming *arguendo* that Martin could bring a private right of action for a violation of *Art. I, § 8 of the Pennsylvania Constitution*, the state constitutional protection against unreasonable searches and seizures, Martin cannot show such a violation because he alleged that Price obtained a warrant before obtaining the results of Martin's blood tests. *Commonwealth v. Shaw, 564 Pa. 617, 770 A.2d 295, 299*

*(Pa. 2001)*, is distinguishable, for the reasons set forth by the District Court on pages 16 and 17 of its Memorandum.

Furthermore, the dismissal of the claims against Elser pursuant to *28 U.S.C. § 1915(e)(2)(B)(ii)* was proper. It is well-established that there is no *respondeat* [*9] *superior* liability in *§ 1983* actions. *See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)*. Elser, who was alleged to have been Dowd and Stauffer's supervisor, was not alleged to have had any personal involvement with the actions that Martin found unsatisfactory. Furthermore, Elser was immune, like the other hospital defendants, from liability based on any role he may have had in the testing of Martin's blood and the release of Martin's laboratory test results to police. *See 75 Pa. C.S.A. §§ 1547(j) & 3755(b) (2005)*.

In addition, Martin seeks to raise a *Fifth Amendment* claim. However, we will not consider this issue, because he raises it for the first time on appeal. *See Harris v. City of Philadelphia, 35 F.3d 840, 845 (3d Cir. 1994)*.

Therefore, because many of Martin's claims were barred by the applicable statutes of limitations, as well as codified immunities, and because Martin otherwise failed to state a claim, Martin's amended complaint properly was dismissed. The District Court's order will be affirmed.