IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHRISTINA MONGELLI,<br>    Plaintiff,<br><br>    v.<br><br>RED CLAY CONSOLIDATED SCHOOL DISTRICT BOARD OF EDUCATION; IRWIN J. BECNEL, JR, CHARLES CAVANAUGH, GARY LINARDUCCI, LORETTA C. RICE, JAMES D. TAYLOR, MARTIN A. WILSON, SR., individually and in their official capacities as members of the Red Clay Consolidated School District Board of Education; ROBERT J. ANDRZEJEWSKI, individually and in his official capacity as Superintendent of the Red Clay Consolidated School District; and RED CLAY CONSOLIDATED SCHOOL DISTRICT,<br>    Defendants. | :<br>:<br>:<br>:<br>:<br>:  Civil Action No. 05-359 SLR<br>:<br>:<br>:  TRIAL BY JURY IS DEMANDED<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**FIRST AMENDED COMPLAINT**[1]

**JURISDICTION AND VENUE**

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1343 and 42 U.S.C. §2000e-5(f)(3) to secure protection of and redress the deprivation of rights secured by:

    (a) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*., and the Civil Rights Act of 1991, Pub. L. 102-166 (hereinafter "Title VII"), providing for relief against racial, religious, national origin and sex discrimination in employment;

    <u>(b)  The First Amendment to the United States Constitution, providing for freedom of speech and to petition the government for redress of grievances;</u>

    (c) The Fourteenth Amendment to the United States Constitution, providing for the rights of all persons within the jurisdiction of the United States to be free from the deprivation of life, liberty and property without due process of law and to enjoy the equal protection of the law; and,

---

[1] Material that is being added in the First Amended Complaint is indicated by <u>underlining</u>. Material that is being deleted is indicated by [brackets].

(d) 42 U.S.C. §1983, providing for the protection of all persons in their civil rights and the redress of the deprivation of rights under color of law, of a right, privilege and immunity secured by the Fourteenth Amendment to the Constitution of the United States.

2. The acts, unlawful employment practices and violations of plaintiff's civil rights alleged herein were committed within the State of Delaware.

## THE PARTIES

3. The Plaintiff, Christina Mongelli ("Mongelli"), is a white female citizen of the United States and resides in New Castle County, State of Delaware and was formerly employed as a teacher by the defendant Red Clay Consolidated School District Board of Education ("Board").

4. The defendant Board is a "school board" as defined in 14 *Del.C.* §1041(1) organized and existing under the laws of the State of Delaware, 14 *Del.C.* §1041, *et seq.* At all times relevant hereto, the Board was an "employer" as defined by 42 U.S.C. §2000e(b).

5. Defendants Irwin J. Becnel, Jr., Charles Cavanaugh, Gary Linarducci, Loretta C. Rice, James D. Taylor, and Martin A. Wilson, Sr. constitute the individual membership of the Defendant Board.

6. Defendant Robert J. Andrzejewski (hereinafter "Superintendent") is the duly appointed Superintendent of the defendant Red Clay Consolidated School District.

7. Defendant Red Clay Consolidated School District ("District") is a "reorganized school district" as defined in 14 *Del.C.* §1041(1) organized and existing under the laws of the State of Delaware, 14 *Del.C.* §1041, *et seq.* At all times relevant hereto, the District was an "employer" as defined by 42 U.S.C. §2000e(b).

## PROCEDURAL REQUIREMENTS

8. The jurisdictional prerequisites to the maintenance of this action under Title VII have been complied with, to wit: a charge of employment discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") on or about July 23, 2004, within 180 days of the commission of the unfair employment practice; a Notice of Right to Sue was received from the U.S. Department

of Justice, Civil Rights Division on April 13, 2005; The [this] Complaint was [has been] filed within 90 days of the receipt of the Notice of Right to Sue.

9. Plaintiff is not required to exhaust any administrative procedures prior to suit under the United States Constitution and 42 U.S.C. §1983.

## FACTS COMMON TO ALL COUNTS

10. On or about January 20, 2004, the plaintiff was hired by the defendants Board/District as a Special Education teacher at Dickinson High School. At the time of her initial employment, the employment relationship was characterized by the Board as a "temporary contract." Effective May 13, 2004, the "temporary contract" was changed to a "regular contract."

11. At the time of her initial hiring, the plaintiff had been granted an "Emergency Certificate" by the Delaware State Board of Education which stated that she was certified and licensed to hold the position of "Teacher of Exceptional Children - LD. SED and MH (Secondary 7-12). The "Emergency Certificate" was valid until January 31, 2007. At the same time, the plaintiff had also been granted a "Initial License" by the Delaware State Board of Education which stated that she was certified and licensed to hold the position of "Teacher of Early Childhood/Primary K-4." That license was valid through June 30, 2005, pending successful passage of PRAXIS I or its equivalent on or before June 30, 2005.

12. At all times relevant hereto, the defendants Board and District were informed and were aware that the teaching certificates described in Paragraph 11 had been issued to the plaintiff.

13. At Dickinson High School, the plaintiff was assigned to teach English and Social Studies to groups of 9th grade special education students.

14.. One of the students in plaintiff's class was an individual named J_____ W_____ ("hereinafter "JW"). At the time of the events at issue here, JW was 14 years of age. The defendants have actual knowledge of the full name and identity of JW.

15. Beginning on or about March 1, 2004, the plaintiff began sending written reports to the Dickinson High School Principal's Office which contained allegations of disruptive behavior on the part of JW. In all, between March 1, 2004 and May 7, 2004, twelve (12) such reports were sent to

the Principal's Office concerning allegations of disruptive behavior by JW. In addition to written reports, plaintiff also made verbal complaints to administrative personnel at Dickinson High School concerning alleged disruptive behavior by JW.

16. Included in the written reports that were submitted by the plaintiff were the following allegations:

(a) On March 2, 2004, plaintiff reported that JW had used cursing and "sexual language" in the classroom.

(b) On March 2, 2004, plaintiff reported that JW continued to be "extremely disruptive and disrespectful." It was reported that when plaintiff told JW to stop talking out loud in class, he responded by saying "fuck her" and yelled that "I'm going to knock her fucking head off."

(c) On March 31, 2004, plaintiff reported that JW had called her a "fucking bitch."

(d) On April 1, 2004, plaintiff reported that JW had called her a "fucking bitch" on many occasions and had also stated that she was "fucking ugly" and was a "fucking idiot."

(e) On April 26, 2004, plaintiff reported that JW had come up to her from behind while she was leaning over to help a student to was seated, and grabbed her forcefully with his hands on her hips and proceeded to "hump" her.

(f) On May 3, 2004, plaintiff reported that JW looked at the plaintiffs breasts and stated "Your nipples are hard." He then grabbed her and pulled her close to his body.

(g) On May 4, 2004, plaintiff reported that when JW was seated on top of his desk and staring at plaintiff, he opened his legs wide and simulated having sexual intercourse, which was accompanied by him making "sucking" noises and heavy breathing.

(h) On May 5, 2004, plaintiff reported that JW had grabbed her by the arm and refused to let go. He then pulled the plaintiff close to his body and said "Let's do the tango." He also asked plaintiff if she had sex and who she had sex with.

(i) On May 6, 2004, plaintiff reported that JW came up to plaintiff's desk and began to sing a "rap song" which included the phrase "how's your pussy," which was repeated several

times. When plaintiff asked him to stop, JW continued singing even louder and began to make sucking noises with his mouth.

(j) On May 7, 2004, plaintiff reported that JW got out of his seat and walked over to the plaintiff, where he began singing a "rap song" which included the words "Ms. Mongelli gives head," which was repeated several times. As he was singing, JW also pointed to his penis.

17. On May 17, 2004, John Kennedy, an Assistant Principal at Dickinson High School, contacted the Delaware State Police concerning JW's conduct toward plaintiff.

18. On June 15, 2004, in a juvenile criminal proceeding, the State of Delaware charged JW with committing the following offenses: (a) Unlawful Sexual Conduct Third Degree in violation of 11 *Del.C.* §767; (b) two counts of Offensive Touching in violation of 11 *Del.C.* §601; and (c) Sexual Harassment, in violation of 11 *Del.C.* §763.

19. On August 4, 2004, in the Family Court of the State of Delaware, JW entered a plea of guilty to three counts of Offensive Touching and one count of Sexual Harassment.

## CLAIMS ARISING UNDER TITLE VII

### Count One - Sexual Harassment

20. Plaintiff realleges Paragraphs 1 through 19 above as though fully set forth herein.

21. The incidents described in Paragraph 16 above amounted to unlawful "sexual harassment" in violation of Title VII [V] and had the effect of substantially interfering with plaintiff's work performance by creating a hostile, intimidating and offensive working environment in violation of Title VII.

22. At the times of the incidents described in Paragraph 16 above, the defendants Board and District did not have any formal policy concerning sexual harassment of teachers by students and did not have any formal or informal grievance procedure to deal with such allegations of sexual harassment.

23. The defendants Board and District knew or should have known about JW's sexual harassment in the classroom as a result of plaintiff's complaints to the administrators at Dickinson High School set forth in Paragraph 16 above.

24. After being placed on notice concerning JW's conduct, defendants Board and District failed and refused to take any prompt and appropriate corrective or remedial action to end the harassment of the plaintiff by JW.

25. The acts as described above by defendants Board and District, its agents and employees were practiced <u>either intentionally or</u> with reckless indifference to the federally protected rights of the plaintiff.

26. The defendants <u>Board and District</u> are liable to the plaintiff <u>under Title VII</u> for the sexual harassment of plaintiff by JW. Under the EEOC Guidelines, 29 *C.F.R.* §1604.11(e), provides:

> An employer may also be responsible for the acts of non-employees, with respect to sexual harassment of employees in the workplace, where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and appropriate corrective action. In reviewing these cases the Commission will consider the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of such non-employees.

27. As a direct and proximate result of the unlawful conduct of defendants, it agents and employees, plaintiff has been injured and has suffered and will continue to suffer emotional pain and suffering, mental anguish, loss of enjoyment of life and other pecuniary and non-pecuniary losses.

**Count Two - Retaliation**

28. Plaintiff realleges Paragraphs 1 through 19 above as though fully set forth herein.

29. On June 17, 2004, the plaintiff was informed by the defendant Board that her employment was being terminated "due to lack of certification."

30. The defendant<u>s</u> Board <u>and District</u> either knew or should have known that <u>their</u> [its] proffered reason for the termination of plaintiff's employment was untrue.

31. The decision to terminate plaintiff's employment <u>by the defendants Board and District violated plaintiff's rights under Title VII because it</u> was made in retaliation against plaintiff because she complained about the sexual harassment of the plaintiff by JW.

32. As a direct and proximate result of the unlawful conduct of defendants, it agents and employees, plaintiff has been injured and has suffered and will continue to suffer monetary damages, including but not limited to backpay, future earnings and fringe benefits.

## CLAIMS ARISING UNDER 42 U.S.C. §1983

### Count Three - Sex Discrimination/Sexual Harassment

[Claims Under 42 U.S.C. §1983 and 14th Amendment]

33. Plaintiff realleges Paragraphs 1 through 26 above as though fully set forth herein.

34. At all times referred to in this Complaint, the defendants Board and District were acting under color of the laws, statutes and ordinances of the State of Delaware.

35. The incidents of "sexual harassment" described in Paragraph 16 above had the effect of substantially interfering with plaintiff's work performance by creating a hostile, intimidating and offensive working environment amounting to unlawful sex discrimination in violation of plaintiff's right under 42 U.S.C. §1983 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

36. The defendants violated the rights secured to plaintiff by 42 U.S.C. §1983 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution to be free from sex discrimination in public employment in that, having actual or constructive knowledge of the sexual harassment committed by JW, the defendants acted either intentionally or with gross negligence, and with a deliberate indifference to plaintiff's rights, in failing to intervene to stop JW's unlawful conduct, in failing to properly supervise or control JW, and in failing to remedy JW's conduct after they learned about it.

37. As a direct and proximate result of the unlawful conduct of defendants, the plaintiff has been injured and has suffered and will continue to suffer emotional pain and suffering, mental anguish, loss of enjoyment of life and other non-pecuniary losses.

### Count Four - Retaliation

38. Plaintiff realleges Paragraphs 1 through 19 above as though fully set forth herein.

39. On June 17, 2004, the plaintiff was informed by the defendant Board that her employment was being terminated "due to lack of certification."

40. The defendants Board, individual Board members, District and Superintendent either knew or should have known that the proffered reason for the termination of plaintiff's employment was untrue.

41. The decision to terminate plaintiff's employment by the defendants Board, individual Board members, District and Superintendent violated plaintiff's rights under the First Amendment to the United States Constitution and 42 U.S.C. §1983 because it was made in retaliation against plaintiff because she complained about the sexual harassment of the plaintiff by JW.

42. As a direct and proximate result of the unlawful conduct of defendants, it agents and employees, plaintiff has been injured and has suffered and will continue to suffer monetary damages, including but not limited to backpay, future earnings and fringe benefits.

WHEREFORE, the plaintiff requests that the Court grant relief as follows:

(a) enter a declaratory judgment that the acts and practices complained of herein were unlawful and violative of Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991;

(b) enter a declaratory judgment that the acts and practices complained of herein were unlawful and violative of the First and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. §1983;

(c) order the defendant Board and District [City] to institute and carry out policies and practices which provide equal employment opportunities and which eradicate the effects of the defendant's past and present unlawful employment practices;

(d) order the defendants, individually and jointly and severally, to make whole the plaintiff, who has been adversely affected by the unlawful employment practices and violation of constitutional rights described herein, by awarding appropriate monetary damages, including but not limited to backpay, future earnings, fringe benefits, emotional pain and suffering, mental anguish, loss of enjoyment of life and other non-pecuniary losses, and compensation for all other injuries and losses proximately caused by the unlawful acts of the defendants;

(e) award plaintiff punitive damages under §102 of the Civil Rights Act of 1991.

(f) award plaintiff the costs of the action and her reasonable attorney's fees.

    (g)  grant such other and further relief as the court deems necessary and proper.

|  |  |
|---|---|
|  |  s/ Joseph M. Bernstein<br>JOSEPH M. BERNSTEIN (#780)<br>800 N. King Street - Suite 302<br>Wilmington, DE 19801<br>302-656-9850<br>302-656-9836 (Fax)<br>E-mail: jmbern001@comcast.net |
| Dated: October 31, 2005 | Attorney for Plaintiff |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 31, 2005, I electronically filed the foregoing First Amended Complaint with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

>Barry M. Willoughby, Esquire
>Michael P. Stafford, Esquire
>Young, Conaway, Stargatt & Taylor, LLP
>The Brandywine Building
>1000 West Street - 17th Floor
>Wilmington, DE 19801

I hereby certify that on October 31, 2005, I caused a copy of same to be served by hand delivery on the above.

>   s/ Joseph M. Bernstein
>JOSEPH M. BERNSTEIN (Bar #780)
>800 N. King Street - Suite 302
>Wilmington, DE 19801
>302-656-9850
>E-mail: jmbern001@comcast.net