IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHRISTINA MONGELLI, <br>     Plaintiff, <br> <br>     v. <br> <br> RED CLAY CONSOLIDATED SCHOOL DISTRICT BOARD OF EDUCATION; IRWIN J. BECNEL, JR, CHARLES CAVANAUGH, GARY LINARDUCCI, LORETTA C. RICE, JAMES D. TAYLOR, MARTIN A. WILSON, SR., individually and in their official capacities as members of the Red Clay Consolidated School District Board of Education; ROBERT J. ANDRZEJEWSKI, individually and in his official capacity as Superintendent of the Red Clay Consolidated School District; and RED CLAY CONSOLIDATED SCHOOL DISTRICT, <br>     Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : Civil Action No.  05-359 SLR <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS AND/OR MOTION TO DETERMINE
THAT THE INDIVIDUAL DEFENDANTS ARE ENTITLED
TO QUALIFIED IMMUNITY**

JOSEPH M. BERNSTEIN (#780)
800 N. King Street - Suite 302
Wilmington, DE 19801
302-656-9850
302-656-9836 (Fax)
E-mail: jmbern001@comcast.net
Attorney for Plaintiff

Dated: January 13, 2006

## TABLE OF CONTENTS

|  | PAGE |
|---|---|
| **TABLE OF AUTHORITIES** | i |
| **NATURE AND STAGE OF PROCEEDINGS** | 1 |
| **SUMMARY OF ARGUMENT** | 3 |
| **STATEMENT OF FACTS** | 4 |
| **STANDARD OF REVIEW** | 5 |
| **ARGUMENT** | |
|    I. COUNT IV OF THE COMPLAINT STATES A PRIMA FACIE CLAIM THAT THE INDIVIDUAL DEFENDANTS VIOLATED PLAINTIFF'S FIRST AMENDMENT RIGHTS BECAUSE HER EMPLOYMENT WAS TERMINATED IN RETALIATION FOR HER COMPLAINTS CONCERNING JW'S CONDUCT | 7 |
|    II. THE INDIVIDUAL DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY | 13 |
| **CONCLUSION** | 15 |

# TABLE OF AUTHORITIES

**CASES**                                                   **PAGE**

*Azzaro v. County of Allegheny*, 110 F.3d 968 (3d Cir. 1997) (*en banc*)     *passim*

*Conley v. Gibson*, 355 U.S. 41, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)     6

*Connick v. Myers*, 461 U.S. 138, 75 L. Ed. 2d 708, 103 S. Ct. 1684 (1983)     8,9,10

*David v. City and County of Denver*, 101 F.3d 1344 (10 Cir. 1996)     10

*Elder v. Holloway*, 510 U.S. 510, 127 L. Ed. 2d 344, 114 S. Ct. 1019 (1994)     13

*Harlow v. Fitzgerald*, 457 U.S. 800, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982)     13

*Hunter v. Bryant*, 502 U.S. 224, 116 L. Ed. 2d 589, 112 S. Ct. 534 (1991)     13

*Langford v. Atlantic City*, 235 F.3d 845 (3d Cir. 2000)     6

*McGreevy v. Stroup*, 413 F.3d 359 (3d Cir. 2005)     *passim*

*Morgan v. Ford*, 6 F.3d 750 (11th Cir. 1993)     10

*Pickering v. Board of Ed. of Tp. High School*, 391 U.S. 563,
20 L. Ed. 2d 811, 88 S. Ct. 1731 (1968)     8,11,14

*Pro v. Donatucci*, 81 F.3d 1283 (3d Cir. 1996)     8

*Robinson v. City of Pittsburgh*, 120 F.3d 1286 (3d Cir. 1997)     14

*Saucier v. Katz*, 533 U.S. 194, 150 L. Ed. 2d 272, 121 S. Ct. 2151 (2001)     13

**STATUTES AND COURT RULES**

42 U.S.C. §1983     1

42 U.S.C. §2000e     1

14 *Del.C.* §1410(b)     13

## NATURE AND STAGE OF PROCEEDINGS

The Plaintiff, Christina Mongelli ("Mongelli") was formerly employed by the defendant Red Clay Consolidated School District ("District") and defendant Red Clay Consolidated School District Board of Education ("Board"). Mongelli's claims against the District and the Board arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*., and allege hostile work environment sexual harassment (Complaint, Count I)[1] and retaliation for protected activity (Complaint, Count II).

In Count III, it is alleged that the defendants District, Board and the "individual defendants"[2] violated plaintiff's rights under 42 U.S.C. §1983 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution to be free from sex discrimination/sexual harassment in public employment. Specifically, it is alleged that all of the above defendants had either actual or constructive knowledge of sexual harassment committed by JW.[3] It is also alleged that the defendants acted either intentionally or with gross negligence, or with a deliberate indifference to plaintiff's rights, in failing to intervene to stop JW's unlawful conduct, in failing to properly supervise or control JW, and in failing to remedy JW's conduct after they learned about it. (Complaint, ¶36).

In Count IV of the Complaint, plaintiff alleges that the defendants Board and District, the individual Board members and the Superintendent violated plaintiff's rights under the First Amendment to the United States Constitution and 42 U.S.C. §1983 in terminating her employment because her termination was made in retaliation against plaintiff because she complained about the sexual harassment committed by JW. (Complaint, ¶41).

---

[1] Plaintiff's claims are set forth in the First Amended Complaint ("Complaint") filed on October 31, 2005 (D.I. 15). A copy of the Complaint is appended to this Brief under Tab No. 1

[2] The "individual defendants" consist of the individual members of the Red Clay Board of Education and the Superintendent of the Red Clay School District.

[3] JW is identified in the Complaint as a student in one of plaintiff's special education classes. (Complaint, ¶14).

All of the defendants have filed an Answer to the Complaint which generally denies all of the material allegations in the Complaint. (D.I. 17). The individual Board members and the Superintendent (hereinafter "Individual Defendants") have also filed a motion to dismiss the claims in Count IV insofar as they seek to impose liability against the Individual Defendants in their individual capacities. The Individual Defendants also seek a declaration by the Court that they are entitled to "qualified immunity." (D.I. 18).

The Individual defendants filed their Opening Brief on December 16, 2005. This is the Plaintiff's Answering Brief.

## SUMMARY OF ARGUMENT

1. The allegations in Count IV of the Complaint state a *prima facie* claim that the plaintiff's termination from her employment was in retaliation for her complaining about the sexual harassment committed by JW and that such conduct violated plaintiff's rights under the First Amendment and Section 1983.

2. The individual Board members and the Superintendent were the persons who were directly involved in and participated in the decision to terminate plaintiff's employment. At this stage of the case, the individual defendants have not produced any evidence to establish an entitlement to qualified immunity.

## STATEMENT OF FACTS

On or about January 20, 2004, the plaintiff was hired by the defendants Board/District as a Special Education teacher at Dickinson High School. At the time of her initial employment, the employment relationship was characterized by the Board as a "temporary contract." Effective May 13, 2004, the "temporary contract" was changed to a "regular contract." (Complaint, ¶10).

At the time of her initial hiring, the plaintiff had been granted an "Emergency Certificate" by the Delaware State Board of Education which stated that she was certified and licensed to hold the position of "Teacher of Exceptional Children - LD. SED and MH (Secondary 7-12). The "Emergency Certificate" was valid until January 31, 2007. At the same time, the plaintiff had also been granted a "Initial License" by the Delaware State Board of Education which stated that she was certified and licensed to hold the position of "Teacher of Early Childhood/Primary K-4." That license was valid through June 30, 2005, pending successful passage of PRAXIS I or its equivalent on or before June 30, 2005. (Complaint, ¶11). The defendants Board and District were informed and were aware that the teaching certificates described above had been issued to the plaintiff. (Complaint, ¶12).

At Dickinson High School, the plaintiff was assigned to teach English and Social Studies to groups of 9th grade special education students. JW was one of the students in plaintiff's class. At the time of the events at issue here, JW was 14 years of age. (Complaint, ¶13 and ¶14). Beginning on or about March 1, 2004, the plaintiff began sending written reports to the Dickinson High School Principal's Office which contained allegations of disruptive behavior on the part of JW. In all, between March 1, 2004 and May 7, 2004, twelve (12) such reports were sent to the Principal's Office concerning allegations of disruptive behavior by JW. In addition to written reports, plaintiff also made verbal complaints to administrative personnel at Dickinson High School concerning alleged disruptive behavior by JW. (Complaint, ¶15). The specific details of JW's alleged behavior are set forth in Paragraph 16 of the Complaint.

On May 17, 2004, John Kennedy, an Assistant Principal at Dickinson High School, contacted the Delaware State Police concerning JW's conduct toward plaintiff. (Complaint, ¶17). On June 15, 2004, in a juvenile criminal proceeding, the State of Delaware charged JW with committing the following offenses: (a) Unlawful Sexual Contact Third Degree in violation of 11 *Del.C.* §767; (b) two counts of Offensive Touching in violation of 11 *Del.C.* §601; and (c) Sexual Harassment, in violation of 11 *Del.C.* §763. (Complaint, ¶18). On August 4, 2004, in the Family Court of the State of Delaware, JW entered a plea of guilty to two counts of Offensive Touching and one count of Sexual Harassment. (Complaint, ¶19).

On June 17, 2004, the plaintiff was informed by the defendant Board that her employment was being terminated "due to lack of certification." (Complaint, ¶29). It is alleged in the Complaint that plaintiff's termination from employment amounted to unlawful retaliation under Title VII and 42 U.S.C. §1983 and the First Amendment because the Board knew that plaintiff was in fact certified by the State of Delaware and the real reason for her termination was due to her complaints about the sexual harassment committed by JW.. (Complaint, ¶30 and ¶31); ( Complaint, ¶41).

**STANDARD OF REVIEW**

A defendant's motion to dismiss tests the legal sufficiency of the complaint. *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), courts "must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Langford v. Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000). A court will grant a motion to dismiss only when it appears that a plaintiff can prove no set of facts that would entitle him or her to relief. *Id*.

## ARGUMENT

### I. COUNT IV OF THE COMPLAINT STATES A PRIMA FACIE CLAIM THAT THE INDIVIDUAL DEFENDANTS VIOLATED PLAINTIFF'S FIRST AMENDMENT RIGHTS BECAUSE HER EMPLOYMENT WAS TERMINATED IN RETALIATION FOR HER COMPLAINTS CONCERNING JW'S CONDUCT

_____

As noted above, the only claim asserted against the Individual Defendants is the claim in Count IV of the Complaint that the Individual Defendants violated Plaintiff's First Amendment rights because her employment was terminated in retaliation for her complaints concerning acts of sexual harassment committed by JW, a student in one of Plaintiff's special education classes.

The contours of the legal landscape concerning the First Amendment rights of public employees are well established. To prevail on a First Amendment/Section 1983 retaliation claim, a plaintiff must establish that she engaged in "protected speech." If the court finds that the speech is protected, a plaintiff must show that the speech was a substantial or motivating factor in the alleged retaliatory action taken by the employer. Finally, the public employer can rebut the claim by demonstrating "by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct." *See, Azzaro v. County of Allegheny*, 110 F.3d 968, 975-981 (3d Cir. 1997) (*en banc*); *McGreevy v. Stroup*, 413 F.3d 359, 364-367 (3d Cir. 2005) (accord).[4]

In *Azzaro*, the court established a two-part test to determine whether a public employee's speech is protected under the First Amendment: First, the speech must pertain to a matter of public

---

[4] Whether the speech is "protected speech" is a legal issue for the court to decide. *Azzaro*, 110 F.3d at 975. The second and third stages of the analysis are questions of fact for a jury. *McGreevy*, 413 F.3d at 365-366.

concern.[5]  Second, the court must balance the government's interest in effective administration against the employee's free speech rights.  *Id.*, 110 F.3d at 976 .[6]

## Public Concern Versus Private Interest

A public employee's speech addresses a matter of public concern when it relates to an issue of "political, social, or other concern to the community." *Connick*, 461 U.S. at 146.  In making this determination, the court can consider the "content, form, and context of a given statement." *Id.*, at 147-148.  The facts in *Connick* itself provide an instructive backdrop for the analysis to be undertaken here.  The plaintiff, Myers, an Assistant District Attorney, became very displeased when she learned that her boss, the District Attorney, had decided to transfer her to a different division of the criminal court.  In the course of her discussion with her superior about the impending transfer, she also complained about other conditions in the office.  When he responded that he did not think her grievances were shared by others, Myers decided to draft and circulate a questionnaire among her peers. The questionnaire inquired of the respondents, *inter alia*, what they thought of the trustworthiness of named superiors and the current state of morale in the office.  It also inquired about whether they had ever been pressured to participate in political campaigns.  Myers was then discharged for her distribution of the questionnaire, which she claimed violated her First Amendment right to free speech. *Id.*, at 140-141.

When the Court applied the "matter of public concern" test to Myers' speech, the Court found that most of Myers' speech was not protected by the First Amendment. Her questions about the trustworthiness of the supervising attorneys and the morale in the District Attorney's office were not

---

[5] See, *Connick v. Myers*, 461 U.S. 138, 147, 75 L. Ed. 2d 708, 103 S. Ct. 1684 (1983).  To ascertain whether speech addresses a matter of public concern, the court must consider whether the speech can be "fairly considered as relating to any matter of political, social, or other concern to the community." *Pro v. Donatucci*, 81 F.3d 1283, 1288 (3d Cir. 1996) (citations omitted).

[6] See,  *Pickering v. Board of Ed. of Tp. High School*, 391 U.S. 563, 568, 20 L. Ed. 2d 811, 88 S. Ct. 1731 (1968) ("The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.").

communications in which the community would have a significant interest and thus did not relate to matters of public concern. *Id.*, at 148. Conversely, her suggestion that there might be pressure from superiors in the office to participate in political campaigns was found to be a matter of public concern and thus protected by the First Amendment. *Id.*, at 149. In *Connick*, the Court also noted that "the focus of Myers' questions is not to evaluate the performance of the office but rather to gather ammunition for another round of controversy with her superiors. These questions reflect one employee's dissatisfaction with a transfer and an attempt to turn that displeasure into a cause celebre." *Id.*, at 148.

No doubt taking a cue from *Connick*, the Defendants here argue that plaintiff's motivation in making the complaints about JW was to improve her personal situation rather than address a matter of "public concern." In this case, the Individual Defendant's argue that plaintiff's complaints concerning JW's conduct are not protected by the First Amendment because they do not relate to "matters of public concern." The Defendants characterize plaintiff's complaints as "designed to improve her own working conditions" and concerned "her own personal classroom behavior management problems involving a single special education student." (Defendant's Brief, p. 10). The Defendants assert that plaintiff's complaints were of an "inherently private and personal nature" and focused on "classroom disciplinary issues" and not "complaints of sexual harassment." (Defendant's Brief, p. 8). The Defendants also contend that plaintiff's complaints concerning JW was not a "matter of public concern" because she "communicated them solely to district administrative personnel" and she "did not air her complaints of classroom sexual harassment to the public." (Defendant's Brief, p. 9 ).

In *Azzaro*, the Third Circuit considered and rejected the very same arguments outlined above, now made by the Individual Defendants. The facts in *Azzaro* can be summarized as follows: Azzaro had reported an incident of sexual harassment committed by one Fusaro, an Assistant County Commissioner, which occurred in the Commissioner's office during the course of an appointment Azzaro had made, in her capacity as the spouse of an employee, to plead for her husband's job.

*Azzaro*, 110 F.3d at 978. The court rejected the defendants' "private concern" arguments and agreed that the subject matter of Azzaro's complaint related to a "matter of public concern":

> The harassment was a form of gender discrimination since Fusaro presumably would not have behaved in the same manner toward a supplicant male spouse of a female employee. We believe this form of discrimination, when practiced by those exercising authority in the name of a public official, is as much a matter of public concern as racial discrimination practiced under similar circumstances.[7] We also believe that Azzaro's communications to Fox and Sirabella brought to light actual wrongdoing on the part of one exercising public authority that would be relevant to the electorate's evaluation of the performance of the office of an elected official. For these reasons, we conclude Azzaro's communications should be regarded as a matter of public concern unless something in their form or context deprived them of their value to the process of self-governance.

*Id.*, 110 F.3d 978-979.

The court in *Azzaro* then proceeded to consider and reject the defendants argument, which has found acceptance in other circuits,[8] that the plaintiff's self-interest in making the complaint did not make the speech "public concern" speech.

> **The distinction between speaking as a citizen and speaking as an employee, then, is simply an alternative way of describing the inquiry into the speaker's motive. While, as we have explained, an employee's motive may be relevant to whether speech is on a matter of public concern, giving controlling significance to "primary purpose" is inconsistent with the result in *Connick*.** Myers' purpose in asking her question about pressure to participate in political campaigns was no different than her purpose in asking her questions on the same questionnaire about office morale and the general reputation of the office supervisors for trustworthiness. Her purpose with respect to each of these questions was clearly "to gather ammunition for another round of controversy with her superiors." *461 U.S. at 148*. Nevertheless, the question regarding pressure to campaign was speech about a matter of public concern because, even

---

[7] In *Connick*, the Court characterized a private complaint alleging racial discrimination in the assignment of school personnel as "a matter inherently of public concern." *Id.*, 461 U.S. at 148 n.8. Also see, *McGreevy*, 413 F.3d at 365 ("speech involving government impropriety occupies the highest rung of First Amendment protection").

[8] See, e.g., *Morgan v. Ford*, 6 F.3d 750, 754 (11th Cir. 1993) (if the employee's purpose was primarily to solve her own personal problem, the fact that her statement would be of value to the process of self-governance does not make the speech public concern speech); *David v. City and County of Denver*, 101 F.3d 1344, 1355 (10 Cir. 1996) (making distinction between speech uttered by a public employee "as an employee" and speech uttered by a public employee "as a citizen").

> taking into account its form and context, it was important to a self-governing society that public employees be free to express themselves about it.

*Id.*, at 979 (emphasis added); also see, *Id.*, at 978 ("if motive [in *Connick*] were dispositive, the inquiry could only have resulted in finding that either all of Myers' speech was public concern speech or that none of it was").

The Court in *Azzaro* also rejected the argument that speech relating to matters of public concern are limited to "public declarations" :

> *Connick* expressly recognizes that the community's interest in the free exchange of information and ideas relating to matters of public concern is not limited to public declarations. That interest is implicated in private exchanges between two individuals as well as in exchanges between an individual and members of the public. Private dissemination of information and ideas can be as important to effective self-governance as public speeches.[9] Thus, if the content and circumstances of a private communication are such that the message conveyed would be relevant to the process of self-governance if disseminated to the community, that communication is public concern speech even though it occurred in a private context. *Connick, 461 U.S. at 146, 148*.

### The *Pickering* Balancing Determination

If the court agrees that plaintiff's complaints about JW's sexual harassment constituted "public concern" speech, the court must employ the *Pickering* balancing test to determine whether an employee's interest in the speech outweighs the state's countervailing interest as an employer in promoting workplace efficiency and avoiding workplace disruption. See , *Pickering*, 391 U.S. at 568 (requiring courts to strike "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of public services it performs through its employees"); *McGreevey*, 413 F.3d at 364 (accord).

---

[9] The court also rejected the argument that Azzarro's complaints about sexual harassment did not qualify as "public concern" speech because the complaints may have been intended to be kept "confidential." *Id.*, at 980.

Sexual harassment, like racial discrimination, is against the law. The District has adopted policies against sexual harassment and procedures for reporting and dealing with complaints concerning sexual harassment (Answer to First Amended Complaint, Tenth Affirmative Defense) (D.I. 17). The Individual Defendants have not asserted in their Brief that the plaintiff's conduct in reporting JW's sexual harassment has disrupted the functioning of the school. Thus, application of the *Pickering* balancing test tips in favor of the plaintiff. See, *Azzaro*, 110 F.3d at 980 (the fact that the defendants had adopted a policy against sexual harassment and a process for reporting and dealing with it amounted to an acknowledgment by defendants that complaints about sexual harassment did not pose an undue threat of disruption). If the court agrees with plaintiff's application of *Pickering*, then it is for a jury to decide whether the plaintiff's complaints about JW was a substantial or motivating factor in the defendants' decision to terminate plaintiff's employment. *McGreevy*, 413 A.2d at 365-366.

## II. THE INDIVIDUAL DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

When a Section 1983 claim is asserted against a public official, the privilege of qualified immunity, in certain circumstances, can serve as a shield from suit. *See, Hunter v. Bryant*, 502 U.S. 224, 227, 116 L. Ed. 2d 589, 112 S. Ct. 534 (1991). The primary purpose of affording public officials the privilege of qualified immunity, thus insulating them from personal liability, is to protect them "from undue interference with their duties and from potentially disabling threats of liability." *Elder v. Holloway*, 510 U.S. 510, 514, 127 L. Ed. 2d 344, 114 S. Ct. 1019 (1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982)). The privilege of qualified immunity, however, can be overcome when state officials violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. The Supreme Court, in *Saucier v. Katz*, 533 U.S. 194, 201, 150 L. Ed. 2d 272, 121 S. Ct. 2151 (2001) explained the analytical process for determining when the privilege of qualified immunity has been overcome:

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry. . . . If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

*See, McGreevy,* 413 F.3d at 364 ("Defendants are entitled to qualified immunity only if the constitutional or statutory violation alleged is not clearly established").

In this case, the decision to terminate plaintiff's employment was made directly by the defendant Board and its individual members. (First Amended Complaint, ¶39). Under Delaware law, the Superintendent also plays a direct role in the dismissal process. See, 14 *Del.C.* §1410(b) (a non-tenured teacher has pre-termination right to conference with Superintendent to discuss reasons for termination). These facts satisfy the requirement under section 1983 that the individual

defendants must have directly participated in the actions at issue. See, *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293 (3d Cir. 1997).

The outcome of the qualified immunity inquiry here is controlled by *McGreevy*. There, the court rejected the defendants' argument that "because *Pickering's* constitutional rule turns upon a fact-intensive balancing test, it can rarely be considered 'clearly established' for the purposes of the Harlow qualified immunity standard." *Id.*, 413 F.3d 366:

> As a general matter, a right is "clearly established" when the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier, 533 U.S. at 202*. To be "clearly established" does not mean that "the very action in question has previously been held unlawful," *Hope v. Pelzer, 536 U.S. 730, 739, 153 L. Ed. 2d 666, 122 S. Ct. 2508 (2002)*; rather it merely means that in light of preexisting law, the unlawfulness of the official's conduct was reasonably and objectively apparent. *Wilson v. Layne, 526 U.S. 603, 615, 143 L. Ed. 2d 818, 119 S. Ct. 1692 (1999)*. Indeed, the Supreme Court has made clear that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope, 536 U.S. at 741*.
>
> In the case before us, the illegality of the officials' actions was "sufficiently clear that they can fairly be said to have been on notice of the impropriety of their actions." *Kinney, 367 F.3d at 372*. Defendants have not proffered any legitimate countervailing interests in limiting McGreevy's speech, much less a countervailing interest which would outweigh McGreevy's interest in addressing matters of such weighty public concern. When the balance of cognizable interests weigh so heavily in an employee's favor, our cases make plain that the law is clearly established.

*Id.*, at 366-367.

In this case, as a result of *Azzaro*, the case law clearly established that plaintiff's speech was a matter of public concern and entitled to protection under the First Amendment. The defendants have not proffered any countervailing interest under *Pickering* in limiting the plaintiff's speech or that would outweigh the plaintiff's interest in addressing the subject matter of sexual harassment of a teacher by a student. Therefore, the decision in *McGreevey*, virtually dictates that the defendants here are not entitled to qualified immunity.

## CONCLUSION

Based on the foregoing reasons, the Court should deny the individual defendants' motion to dismiss or grant the defendants qualified immunity.

      s/ Joseph M. Bernstein
JOSEPH M. BERNSTEIN (#780)
800 N. King Street - Suite 302
Wilmington, DE 19801
302-656-9850
302-656-9836 (Fax)
E-mail: jmbern001@comcast.net
Attorney for Plaintiff

Dated: January 13, 2006